**In the Matter of the Application to Compel Arbitration Between**

**S & R COMPANY OF KINGSTON, a New York General Partnership and Hartford Fire Insurance Company, Petitioners,**

**and**

**LATONA TRUCKING, INC., Respondent.**

No. 97–CV–0865.

United States District Court, N.D. New York.

Sept. 8, 1997.

Gleason, Dunn, Walsh & O'Shea (Mark T. Walsh, of Counsel), Albany, NY, for petitioners.

Lewis & Greer, P.C. (J. Scott Greer, of Counsel), Poughkeepsie, NY, for respondent.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Petitioners, S & R Company of Kingston ("S & R") and Hartford Fire Insurance Company ("Hartford"), brought this petition, pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, seeking to compel arbitration of a dispute presently pending before this Court in an action entitled *Latona Trucking, Inc. v. Hartford Fire Ins. Co. et al.*, (96–CV–306) ("*Latona v. Hartford*" or "pending action"). The Petitioners commenced the instant action following an Order by Magistrate Judge David R. Homer, in *Latona v. Hartford*, denying Petitioners' request to extend the deadline for pre-trial motions, thus precluding Petitioners from making a motion in that action, pursuant to 9 U.S.C. § 3, to stay *Latona v. Hartford* pending the enforcement of arbitration.[1]

Latona opposes the instant petition asserting that (1) it has not agreed to arbitrate its claims against Hartford; (2) its claim against S & R does not fall within the scope of the arbitration agreement; and (3) Petitioners waived their right to arbitrate claims in *Latona v. Hartford*.

For the reasons that follow, Petitioners' request to compel arbitration is denied in its entirety.

## I. BACKGROUND

In July, 1995, Latona executed a contract with S & R to provide "Phase I + Site Work including site work for a Toys "R" Us Retail Store" at the Hudson Valley Plaza in Kingston, New York (the "project"). S & R was the owner and developer of the project, and Toys "R" Us ("Toys") was a part owner of the project. Hartford was the surety on a payment bond obtained by S & R to secure payment of the contract price to Latona.

Article 18.1 of the contract contained an arbitration clause providing:

> In the event any dispute arises between the Parties relative to this contract which cannot be resolved by the Parties within thirty (30) days from the date first noticed, the Parties agree to refer the dispute to an arbitrator in accordance with the rules of the American Arbitration Association.

Additionally, the payment bond included a clause incorporating the contract into the bond, which read as follows:

> WHEREAS, PRINCIPAL (S&R) has entered into a contract with OBLIGEE (Latona) dated July 12, 1995 designated Phase 1+ Site Work ... which is made a part hereof as fully as if copied verbatim herein.

Disputes arose between the parties regarding work completion and payments. On February 20, 1996, Latona commenced the pending action to collect $650,000 from Hartford under the payment bond as a result of S & R's failure to make payments due under the contract. Latona further sought to recover attorney's fees from S & R and Toys, pursuant to New York General Obligations Law § 5–322.3, for failure to file the payment bond with the County Clerk. In answering the complaint, Hartford and Toys did not directly include "arbitration and award" as an affirmative defense. They did, however, plead a defense of unspecified "documentary evidence."

On June 28, 1997, a stipulation and consent order was filed allowing S & R to intervene as a defendant. Latona thereafter served an amended complaint. In answering the amended complaint, neither Hartford, Toys nor S & R pleaded "arbitration and award" as an affirmative defense. However, each asserted the defense of unspecified "documentary evidence." S & R also counter-

1. Additionally, Petitioners contend they would have moved to dismiss the pending action based on a forum selection clause in the contract requiring the parties to litigate in Supreme Court, Onondaga County, and to stay the proceedings because Latona was not a licensed corporation under the laws of the State of New York. Petitioners appeal Magistrate Homer's Order denying its application to make the above untimely motions.

claimed against Latona alleging breach of contract.

The pending action continued with all parties actively participating in the discovery process. On June 5, 1997, Magistrate Judge Homer held a telephone conference regarding defendants' request to substitute counsel. During the course of that conference, defendants' new attorneys moved for an order to extend the May 15, 1997 deadline for filing pre-trial motions. Specifically, defendants intended, *inter alia*, to apply for a stay of the proceedings pending enforcement of the arbitration clause contained in the contract. By an Order dated June 6, 1997, Magistrate Judge Homer granted defendants' request for substitution of counsel, but denied its request for leave to file pre-trial motions. Defendants have appealed that Order to this Court. The pending action presently is scheduled for trial on October 20, 1997.

On June 18, 1997, defendants commenced this separate action, pursuant to 9 U.S.C. § 4, to compel arbitration of the pending action.

The Court now turns to the issues presented.

## II. DISCUSSION

### A) The Federal Arbitration Act

The Petitioners filed this action, pursuant to 9 U.S.C. § 4, to compel arbitration of disputes between the parties in accordance with the terms of an arbitration clause contained in the contract executed between Latona and S & R. Latona opposes the petition asserting that (1) it has not agreed to arbitrate its claims against Hartford; (2) its claim against S & R does not fall within the scope of the arbitration agreement; and (3) Petitioners waived their right to arbitrate claims in *Latona v. Hartford.*

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, requires courts to enforce arbitration agreements in contracts involving interstate commerce. Section 4 of the FAA, 9 U.S.C. § 4, governs the procedure for filing a petition to compel arbitration, and provides:

A party aggrieved by the alleged failure, neglect, or refusal of another under a writ-

ten agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The Court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4.

■ A strong presumption exists in favor of arbitrating disputes. See, e.g, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983) ("*Moses*"); *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2452–53, 41 L.Ed.2d 270, *reh'g denied,* 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974). Indeed, "[a]ny doubts concerning the scope of arbitration issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrabililty." *Moses,* 460 U.S. at 24–25, 103 S.Ct. at 941–42.

■ The initial inquiry a court makes in deciding an arbitration petition is to ask whether the parties agreed to arbitrate, and if so, whether the claims fall within the scope of the arbitration agreement. *See* 9 U.S.C. §§ 3–4; *Moses,* 460 U.S. at 24, 103 S.Ct. at 941; *Progressive Cas. Ins. Co. v. C.A, Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 45 (2d Cir.1993) ("*Progressive*") (quoting *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.,* 923 F.2d 245, 249 (2d Cir.), *cert. denied,* 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991)). "If the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." *Genesco. Inc. v. T. Kakiuchi & Co. Ltd.,* 815 F.2d 840, 845 (2d Cir.1987).

#### 1. Agreement to Arbitrate as between Latona and Hartford

■ Initially, the Court notes both parties' uncertainty regarding whether State law or

Federal law controls the determination of whether the parties agreed to arbitrate. The Second Circuit has instructed that although " § 2 of the (FAA) preempts state law which treats arbitration agreements differently from any other contracts, it also 'preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate.'" *Progressive*, 991 F.2d at 46 (quoting *Cook Chocolate Co. v. Salomon, Inc.*, 684 F.Supp. 1177, 1182 (S.D.N.Y.1988)). Even where state law applies, however, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

In the instant case, Latona avers that it never agreed to arbitrate its disputes with Hartford. Specifically, Latona cites to the absence of an arbitration clause in the payment bond as support for its argument. Petitioners, by contrast, assert that the payment bond incorporates the arbitration clause contained in the contract between Latona and S&R.[2]

█ An inspection of the payment bond reveals that the payment bond incorporates by reference the contract between Latona and S&R.[3] The more difficult question, however, is whether, under New York law, the incorporation clause binds Latona to arbitrate disputes with the surety Hartford.

The New York Court of Appeals held, in *Fidelity and Deposit Co. of Maryland v. Parsons & Whittemore Contractors Corp.,* 48 N.Y.2d 127, 128, 421 N.Y.S.2d 869, 397 N.E.2d 380, 381 (1979) (*"Fidelity"*), that a surety was not entitled to a stay of arbitration when its performance bond incorporated by reference a subcontract containing a broad arbitration clause. The Court reasoned that by "accept[ing] the agreement of the general contractor and subcontractor to arbitrate disputes" it implicitly agreed to "be

bound by the resolution reached in the arbitration forum of any dispute between the general contractor and the subcontractor." *Fidelity*, 48 N.Y.2d at 131–32, 421 N.Y.S.2d 869, 397 N.E.2d 380. The Court did not reach the issue of whether the parties could compel the surety to arbitrate its disputes arising under the subcontract, or vice-versa.

A review of subsequent New York decisions show that the courts have yet to address this issue, although New York courts have consistently applied *Fidelity* to hold that determinations made in arbitration bind a surety. *See, e.g., Arbitration Between International Fidelity Ins. Co. and Saratoga Springs Pub. Library*, 236 A.D.2d 719, 653 N.Y.S.2d 729 (1997), *appeal denied*, 89 N.Y.2d 817, 659 N.Y.S.2d 857, 681 N.E.2d 1304 (1997).

Similarly, decisions in this Circuit have not directly addressed whether an incorporation by reference clause in a payment bond incorporates an arbitration clause contained in the contract. In *Compania Espanola de Petroleos, S.A., v. Nereus Shipping S.A.*, 527 F.2d 966 (2d Cir.1975), however, a question of similar ilk was presented. In that case the Second Circuit held that a guarantor, who agreed to perform the balance of the contract and to assume the rights and obligations of the charterer, was bound to arbitrate disputes between it and the agent for owners under the contract arbitration clause. *Id.* at 973–74. The Court noted that "where an arbitration clause is applicable by its own terms to all disputes and is not limited to those arising between the Owner and Charterer, the agreement to arbitrate binds 'not only the original parties, but also all those who subsequently consent to be bound by [the terms of the contract].'" *Id.* (quoting *Lowry & Co. v. S.S. Le Moyne D'Iberville*, 253 F.Supp. 396 (S.D.N.Y.1966), *appeal dismissed*, 372 F.2d 123 (2d Cir.1967)).

Other federal courts have held that an incorporation clause contained in a perfor-

---

**2.** The Court may decide this question because Latona has not requested a jury trial. *See* 9 U.S.C. § 4.

**3.** The second paragraph of the payment bond provides: "WHEREAS, PRINCIPAL (S & R) has

entered into a contract with OBLIGEE (Latona) dated July 12, 1995 designated Phase 1+ Site Work ... which is made a part hereof as fully as if copied verbatim herein."

mance bond that incorporates a contract also incorporates any arbitration clause contained in that contract. *J & S Constr. Co. v. Travelers Indemnity Co.*, 520 F.2d 809, 810 (1st Cir.1975); *Maxum Foundations Inc. v. Salus Corp.*, 779 F.2d 974, 980–81 (4th Cir. 1985); *J.S. & H. Constr. Co. v. Richmond County Hosp. Authority*, 473 F.2d 212, 216 (5th Cir.1973); *Exchange Mutual Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir.1984); *Hoffman v. Fidelity and Deposit Co. of Maryland*, 734 F.Supp. 192, 195 (D.N.J.1990). Indeed, the Eleventh Circuit held that a surety agreed to arbitrate when the performance bond referenced a subcontract that in turn referenced the general contract containing a broad arbitration clause. *United States Fidelity Guaranty Co. v. West Point Construction Co.*, 837 F.2d 1507, 1508 (11th Cir.1988).

This Court finds no reason to depart from this persuasive authority. Further, ordinary principles of contract law mandate this result, and a logical extension of *Fidelity* lends the necessary support of state law. This finding, moreover, is supported by the strong federal policy favoring arbitration. Thus, the Court holds that the incorporation clause contained in the performance bond that incorporates the contract also incorporates the arbitration clause contained in that contract.

■ Latona next asserts that even if the arbitration clause is incorporated into the payment bond, it should not be compelled to arbitrate its dispute with Hartford because the arbitration clause, by its terms, applies only to the parties to the contact, i.e., to Latona and S & R. *See Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.*, 658 F.Supp. 809, 814 (S.D.N.Y. 1987) (noting that in addition to proving arbitration clause was incorporated by reference, "the language of the clause must be broad enough to allow nonsignatories' disputes to be brought within its terms"). This presents a more difficult question.

■ The Supreme Court has counseled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960);

*First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995) (same). However, a nonsignatory party may be bound to an arbitration agreement if so dictated by the "ordinary principles of contract and agency." *See, e.g., McAllister Bros., Inc, v. A & S Transp. Co*, 621 F.2d 519, 524 (2d Cir.1980).

In determining the breadth of an arbitration clause, Courts have found language such as "any dispute arising out of this contract," or "all disputes arising out of this charter," to be sufficiently broad to bind nonsignatories to arbitration when the contract is referenced by an incorporation clause. *Progressive Cas. v. C.A. Reaseguradora Nacional*, 991 F.2d 42, 47–48 (2d Cir.1993). Conversely, courts have found language such as "between the Disponent Owners and Charterers" to be sufficiently narrow so as not to bind nonsignatories to arbitration, despite an incorporation clause. *Import Export Steel Corp. v. Mississippi Valley Barge Line Co.*, 351 F.2d 503, 505–06 (2d Cir.), *reh'g denied*, 351 F.2d 503 (1965); *see also Continental U.K. Ltd.*, 658 F.Supp. at 812 (espousing principle that use of restrictive language in arbitration clause makes it difficult to bind nonsignatory); *Production Steel Co. of Illinois v. SS Francois, L.D.*, 294 F.Supp. 200, 201 (S.D.N.Y.1968) (finding petitioner's "attempt to expand the arbitration clause beyond its plain meaning not only violate[d] fundamental contract principles but ignore[d] the plain and limited language used by the parties").

The arbitration clause at issue in this case reads as follows:

> In the event any dispute arises between the Parties relative to this contract which cannot be resolved by the Parties within thirty (30) days from the date first noticed, the Parties agree to refer the dispute to arbitration....

The Second Circuit held, in *Progressive*, 991 F.2d at 48, that an arbitration clause included by reference in the parties' retrocession agreements required the parties to arbitrate. The arbitration clause at issue required arbitration of disputes "between the contracting parties." The court emphasized

that the arbitration clause was not "restrictively worded by referring to the immediate parties to that contract by name." *Id.*

Other circuits have adopted a similar, and perhaps more liberal view, in assessing whether the terms of an arbitration clause limit its applicability to the immediate parties. *See JS & H Constr. Co.,* 473 F.2d at 214; *United States Fidelity Guaranty Co.,* 837 F.2d at 1507; *Exchange Mutual Ins. Co.,* 742 F.2d at 276. Indeed, another district court confronted with a nearly identical arbitration clause held that the arbitration clause, by its terms, did not restrict application to only the signatory parties. *Hoffman,* 734 F.Supp. at 192, 194–95.

Latona relies heavily on two decisions; namely, *Import Export Steel Corp.* and *Continental U.K. Ltd.,* for the proposition that the arbitration clause at issue is sufficiently restrictive in scope to apply only to Latona and S & R. These cases, however, are distinguishable.

First, the cases cited by Latona involve a signatory seeking to compel a non-signatory to arbitrate. The present case involves the reverse—a nonsignatory (Hartford) seeking to compel a signatory (Latona) to arbitrate. In the latter situation, a signatory has a settled expectation of arbitrating disputes arising from the contract. Such an expectation, however, may not be present for nonsignatories that merely have incorporated by reference a contract containing an arbitration clause. Second, the arbitration clauses at issue in these cases referred to the immediate parties to the contract, *i.e.,* to the "Owners and Charterers." Here, the arbitration clause refers to undefined "Parties," which may well include Hartford.

The Court acknowledges that the arbitration clause at issue is neither as narrow nor as broad as those cited in the above cases. On balance, however, the arbitration clause cannot be said to limit, by its terms, arbitration of disputes between just Latona and S & R. Rather, the arbitration clause, when coupled with the incorporation clause contained in the payment bond, expresses an intention by Latona, S & R and Hartford to arbitrate all disputes. This finding is consistent with the healthy federal policy favoring arbitration.

## 2. Scope of Agreement to Arbitrate as between Latona and S & C

■ "The issue of an arbitration agreement's scope is governed by 'the federal substantive law of arbitrability,'" which requires that questions of arbitrability be addressed in light of the federal policy favoring arbitration. *Progressive,* 991 F.2d at 48 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth–Inc,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985)).

■ Latona's claim against S & R is for attorney's fees, pursuant to New York General Obligations Law § 5–322.3, for failing to file a copy of the payment bond with the County Clerk's Office. This claim does not fall within the scope of the arbitration agreement between Latona and S & C, but rather arises under New York law. Therefore, the claim is non-arbitrable.

## 3. Waiver

■ Lastly, Latona contends that Petitioners waived their right to arbitrate in *Latona v. Hartford* by aggressively litigating the claims and counterclaim in that action for nearly 16 months, without ever demanding arbitration, raising arbitration as an affirmative defense, or otherwise reserving the right to arbitrate. Petitioners, in turn, maintain that issues of waiver are resolved by arbitrators, not by courts. Petitioners further argue that, in any event, they have not waived their right to arbitrate.

■ Petitioners are correct in asserting that arbitrators generally determine issues of waiver. *Doctor's Ass., Inc. v. Distajo,* 66 F.3d 438, 454 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996); *World Brilliance Corp. v. Bethlehem Steel Co.,* 342 F.2d 362, 364 (2d Cir.1965). As explained by the Second Circuit, " § 2 of the FAA makes an arbitration agreement enforceable 'save upon such grounds as exist at law or in equity for the revocation of any contract.'... Waiver ... does not constitute a ground for 'revocation' of a contract ... and thus is not a basis for invalidating an

arbitration contract." *Doctor's Ass., Inc.*, 66 F.3d at 454 (quoting 9 U.S.C. § 2). The court further explained that under § 4 of the FAA, a petition to compel arbitration must be granted "except where a question of fact exists as to (1) 'the making of the arbitration agreement' or (2) the 'failure, neglect, or refusal of another ... to arbitrate.' *Id.* (quoting 9 U.S.C. § 4). The court concluded that "[b]ecause acts by [a] petitioner constituting waiver of the right to arbitrate [does] not fall within either of these enumerated categories," issues of waiver must be decided by the arbitrators. *Id.*

Notwithstanding this analysis, a "trend" has developed whereby "the waiver defense has slowly been transformed ... into a broader equitable defense in § 4 cases." *Id.* at 456. For instance, in *Kramer v. Hammond,* 943 F.2d 176, 178 (2d Cir.1991), the Second Circuit decided the waiver issue where the party seeking arbitration had actively participated in pre-trial litigation involving a suit filed against him in state court. Other federal courts have similarly decided issues of waiver. *See, e.g., Doctor's Ass., Inc.*, 66 F.3d at 456 n. 12 ("we are bound to hold that a district court may reach the question of waiver whenever a party seeking arbitration has engaged in any prior litigation"); *Merrill Lynch, Pierce Fenner & Smith v. Lecopulos,* 553 F.2d 842, 845 (2d Cir.1977).

In the present case, Petitioners have engaged in substantial pre-trial litigation in *Latona v. Hartford.* In fact, Petitioners presently appeal to this Court an Order by Magistrate Homer denying Petitioners' request to make an untimely motion, pursuant to 9 U.S.C. § 3, to stay that action pending arbitration.[4] Given the procedural posture from which the present petition arose, the Court will follow the lead of *Doctor's Ass., Inc.* and decide the issue of waiver for itself.

 A party waives the right to arbitrate when it "engages in protracted litigation that results in prejudice to the opposing party." *See, e.g., Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir.1993). In accordance with the healthy federal policy favoring arbitration,

"any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Leadertex v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 25 (2d Cir.1995); *see also Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985) (stating "waiver of arbitration is not to be lightly inferred") (internal quotations omitted).

 Courts have cautioned that "waiver determinations necessarily depend upon the facts of the particular case and is not susceptible to bright-line rules." *Cotton,* 4 F.3d at 179; *Leadertex,* 67 F.3d at 25. Nonetheless, factors to consider in making this determination include "the amount of litigation (usually exchanges of pleadings and discovery), the time elapsed from the commencement of litigation to the request for arbitration, and the proof of prejudice." *Leadertex,* 67 F.3d at 25; *see also Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968) (emphasizing that it is "the presence or absence of prejudice which is determinative of this issue"). Prejudice results "when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of the adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." *Cotton,* 4 F.3d at 179 (internal citations omitted); *see also Leadertex,* 67 F.3d at 27 (finding petitioner waived right to arbitrate as result of economic prejudice suffered from delay).

The Second Circuit held, in *Com–Tech Ass. v. Computer Ass., Int'l Inc.,* 938 F.2d 1574, 1576–77 (2d Cir.1991), that petitioners waived their right to arbitrate by not asserting the arbitration defense in their answers and actively participating in discovery. Under these circumstances, the court reasoned that delay in asserting a contractual right to arbitrate "until the eve of trial defeats one of the reasons behind the federal policy favoring arbitration: that disputes be resolved without 'the delay and expense of litigation.' " *Id.* (quoting H.R.Rep. No. 536, 68th Cong., 1st Sess. at 3 (1924)).

---

4. It is firmly established that a court may decide a waiver defense in actions brought under § 3 of the FAA. See, e.g., Doctors Ass., Inc., 66 F.3d at 454.

In *Cotton,* 4 F.3d at 180, the court held that petitioner waived the right to arbitrate by actively litigating the dispute and thus "securing for himself the benefits of pretrial discovery that [are] often unavailable in an arbitral forum." The court also noted that petitioner's delay "had imposed unnecessary expense ... on [respondent] which would be compounded if she were now required to arbitrate her claim." *Id.*

Applying these principles, the Court finds that Petitioners waived their right to arbitrate. First, Petitioners failed to assert the arbitration defense in their answers to the complaint or amended complaint, despite asserting other affirmative defenses and S & R asserting a counterclaim.[5] Petitioners also actively participated in pre-trial discovery. For instance, S & R served Latona with 19 interrogatories and ten document demands, resulting in the production of over 2100 pages of documents. Petitioners further took depositions, subpoenaed documents, engaged in discovery disputes and attended two settlement conferences.

 Although delay alone is generally insufficient to deny a petition to arbitrate, *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985); *Demsey & Ass. Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2d Cir.1972), it is a relevant in determining whether a party has been prejudiced. *See, e.g., Cotton,* 4 F.3d at 179. Here, approximately fifteen months elapsed from the time Latona filed the complaint until the time Petitioners raised the arbitration defense to Magistrate Judge Homer. Petitioners' choice to participate in the pending action needlessly delayed resolution of the parties dispute, and unnecessarily exposed Latona to increased expense. Further, Latona would only incur additional expense were the Court to permit Petitioners to abandon the instant action and retreat to arbitration.

Second, Petitioners secured benefits from the pre-trial discovery process otherwise unavailable in arbitration. *See Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Markets Corp.,*

996 F.2d 1478, 1480 (2d Cir.1993) (per curiam); *Cotton,* 4 F.3d at 180; *Com–Tech,* 938 F.2d at 1577; *Liggett & Myers Inc. v. Bloomfield,* 380 F.Supp. 1044, 1047–48 (S.D.N.Y.1974). As distinguished from the case of *Rush,* 779 F.2d 885 (2d Cir.1985), the parties here engaged in discovery with respect to arbitrable claims.

In sum, because Petitioners derived benefits from the liberal discovery procedures of the federal courts and unnecessarily delayed asserting their arbitration defense, the Court finds that Petitioners waived their contractual right to compel arbitration.

## III. CONCLUSION

For the reasons stated above, Petitioners' request to compel arbitration is DENIED in its entirety.

**IT IS SO ORDERED.**

---

**5.** Petitioners suggest they raised the arbitration defense by raising a defense of unspecified "documentary evidence" Although this may have

been their intention, Petitioners failed to adequately plead that intention to Latona.