**UPSTATE SHREDDING, LLC and Ben Weitsman & Son, Inc., Plaintiffs,**

v.

**CARLOSS WELL SUPPLY CO. (d/b/a Carloss Company); and Dresser Equipment Group, Inc. (d/b/a Waukesha Engine), Defendants.**

**Carloss Well Supply Co. (d/b/a Carloss Company), Third–Party Plaintiff,**

v.

**Eaton Corporation; Young Radiator Co.,; and W.A. Kraft Corp., Third–Party Defendants.**

**No. 3:99–CV–751.**

United States District Court, N.D. New York.

Feb. 22, 2000.

---

Levene, Gouldin & Thompson, LLP, Vestal, NY, for plaintiffs, Philip C. Johnson, of counsel.

Hancock & Estabrook, LLP, Syracuse, NY, for defendant Carloss Well Supply Co. d/b/a Carloss Company, Eric C. Nordby, John L. Murad, Jr., of counsel.

Nixon Peabody LLP, Rochester, NY, for defendant Dresser Equipment Group, Inc. d/b/a Waukesha Engine, Richard A. McGuirk, Harold A. Kurland, of counsel.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Defendant Dresser Equipment Group, Inc. d/b/a Waukesha Engine ("Waukesha") moves: (1) to dismiss Plaintiffs Upstate Shredding, LLC ("Upstate Shredding") and Ben Weitsman & Son, Inc.'s ("Weitsman") Third and Fourth Causes of Action alleging a breach of the implied warranties of merchantability and fitness, respectively, pursuant to FED.R.CIV.P. 12(b)(6); and (2) to stay the present action pending arbitration of all claims and cross-claims brought against Waukesha, pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. The Court assumes familiarity with its prior Decision & Order in this matter. *See Upstate Shredding, LLC v. Carloss Well Supply Co. et al.*, 99–CV–751 (Nov. 30, 1999).

### I. Background

On May 12, 1999, Plaintiffs Upstate Shredding and Weitsman commenced the instant action against Defendants Carloss Well Supply Co. d/b/a Carloss Company ("Carloss") and Waukesha, alleging numerous contract-related claims in connection with Plaintiffs' purchase of the Carloss Shredder Drive System ("Shredder Drive System"). The Shredder Drive System, which was designed and manufactured by Carloss, employed gas engines designed and manufactured by Waukesha. Plaintiffs purchased the Shredder Drive System (including the Waukesha gas engines) to operate its Newell 120104 Megashredder ("Newell Megashredder"). The Shredder Drive System, however, had numerous alleged defects and design deficiencies that made Plaintiffs unable to operate the Shredder Drive System or, in turn, the Newell Megashredder.

Upon leave of this Court, Plaintiffs filed an Amended Complaint alleging claims against Carloss for: breach of contract (First Cause of Action); breach of express warranty (Second Cause of Action); breach of the implied warranty of merchantability (Third Cause of Action); breach of the implied warranty of fitness (Fourth Cause of Action); and negligent misrepresentation (Sixth Cause of Action). Plaintiffs also allege claims against Waukesha for: breach of the implied warranty of merchantability (Third Cause of Action); breach of the implied warranty of fitness (Fourth Cause of Action); and breach of express warranty (Fifth Cause of Action). *See* Amended Compl. (Docket No. 54). In its Answer, Carloss asserted numerous counterclaims against Plaintiffs alleging, *inter alia,* breach of contract and unjust enrichment and cross-claims against Waukesha for apportionment of liability and indemnification based on Waukesha's negligent misrepresentations in connection with Carloss' purchase of gas engines designed and manufactured by Waukesha that were subsequently employed in the Carloss Shredder Drive System purchased by Plaintiffs.[1] *See* Docket No. 57.

Relying on the breach of express warranty claim contained in Plaintiffs' Amended Complaint, Waukesha contends that the Express Limited Warranty ("Express Warranty") provided to Plaintiffs contains an arbitration provision that requires binding arbitration for claims arising out of the Express Warranty.[2] *See* Def. Waukesha Mem. of Law, at 11–15 (citing Express Warranty, at § VI) (attached to Amended Complaint). Notably, the Express Warranty further provides that "[t]he warranties set out above are extended to all owners in the original chain of distribution." Express Warranty, at § VI.

Similarly, Waukesha argues that Carloss' cross-claims—which arise out of the sale of Waukesha's engines—also require arbitration pursuant to the Distribution, Service and Commission Agreement ("Distribution Agreement") between Carloss and itself, and the Express Warranty, by way of the provision in the Distribution Agreement incorporating the terms and limitations contained in the Express Warranty. *See id.* at 15–18 (citing Distribution Agreement, at Arts. VIII and XIV) (attached to Affidavit of Richard McGuirk, Esq., at Ex. 4). Accordingly, Waukesha seeks to stay both Plaintiffs' claims and Carloss' cross-claims pending arbitration in Milwaukee, Wisconsin, the location provided for in both the Express Warranty and the Distribution Agreement.[3] *See*

> The foregoing sets forth Waukesha's only obligations and owners' exclusive remedy for breach of warranty, whether such claims are based on breach of contract, tort (including negligence and strict liability), or other theories; and the foregoing is expressly in lieu of other warranties whatsoever expressed, implied, and statutory, including without limitation, the implied warranties of merchantability and fitness.

Express Warranty, at § VI (capitalized in original).

---

1. Carloss has also filed a Third–Party Complaint against Eaton Corporation; Young Radiator Co.; and W.A. Kraft Corp., suppliers of components (e.g., clutches and radiators) used by Carloss in the manufacture of its Shredder Drive System. The Third–Party Complaint alleges a total of fourteen (14) causes of action alleging claims for: breach of contract; breach of the implied warranties of merchantability and fitness; negligent misrepresentation; and contribution and indemnification. *See* Docket No. 27. These claims are not implicated in connection with the instant motion.

2. Waukesha separately argues that the language of the Express Warranty explicitly excludes claims seeking recovery under the alternate theories of a breach of the implied warranties of merchantability and fitness. *See* Waukesha Mem. of Law at 5–6 (citing Express Warranty, at § VI). Specifically, Waukesha relies on that section of the Express Warranty that states:

3. In its Notice of Motion, *see* Docket No. 70, Waukesha moves, pursuant to 9 U.S.C. § 3, for a stay pending arbitration of Plaintiffs': (1) Fifth Cause of Action for breach of express warranty (incorrectly labeled by Waukesha as Plaintiffs' Sixth Cause of Action) and (2) Third and Fourth Causes of Action (to the extent they are not dismissed by the Court in connection with the instant motion) for breach of the implied warranties of merchantability and

Distribution Agreement, at Art. XIV; Express Warranty, at § VI.

Notwithstanding express allegations contained in the Amended Complaint to the contrary, *see* Amended Compl. at ¶¶ 62–63, Plaintiffs contend that they cannot be bound by the arbitration provision contained in the Express Warranty because "[p]rior to the commencement of this action, plaintiffs were not aware of the existence of the Waukesha Express Limited Warranty and had not been apprized of its terms and condition[s] or its limitations and restrictions. . . ." Pl.Mem. of Law at 8. Carloss advances two grounds in opposition to Waukesha's motion for a stay pending arbitration of its cross-claims against Waukesha. First, Carloss argues that it was not a signatory to the Express Warranty and, thus, cannot be bound by the arbitration clause contained therein. *See* Def. Carloss Mem. of Law at 3–4. Second, Carloss argues that "the arbitration provisions relied on by Waukesha do not embrace the subjects of dispute in [its] cross-claims," *id.* at 5, and, thus, do not fall within the scope of the arbitration agreement.

## II. Discussion

■ The Federal Arbitration Act ("FAA" or the "Act"), 9 U.S.C. § 1 *et seq.*, requires courts to enforce arbitration agreements in contracts involving interstate commerce. *See Oldroyd v. Elmira Sav. Bank. FSB*, 134 F.3d 72, 75 (2d Cir. 1998). Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, which provides for stays of federal proceedings pending arbitration,[4] provides, in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

■ The FAA establishes a strong federal policy in favor of arbitrating disputes. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[The federal substantive law of arbitrability] counsels that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration") (quotation omitted); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("*Moses*"); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45 (2d Cir.1993) ("*Progressive*"); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir.1987); *In re Matter of Arbitration Between S & R Co. of Kingston and Latona Trucking, Inc.*, 984 F.Supp. 95, 98 (N.D.N.Y.1997), *aff'd*, 159 F.3d 80 (2d Cir.1998), *cert. dismissed*, —— U.S. ——, 120 S.Ct. 629, 145 L.Ed.2d 506 (1999). In accordance with that policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*, 460 U.S. at 24–25, 103 S.Ct. 927; *see also Burns v. New York Life Ins. Co.*, 202 F.3d 616, —— (2d Cir.2000) ("[A]rbitration is indicated unless it can be said

fitness, respectively. *See* Notice of Motion at ¶ 2.

4. Waukesha solely moves to stay, rather than compel arbitration with respect to Plaintiffs' claims and Carloss' cross-claims. *See* Def. Mem. of Law at 10 n. 4; *see also Tepper Realty Co. v. Mosaic Tile Co.*, 259 F.Supp.

688, 692 (S.D.N.Y.1966) ("The power to grant . . . a stay under [section] 3 [of the FAA] is in no way conditioned upon the existence of power to compel arbitration in accordance with [section] 4 of the [FAA].") (citations omitted).

'with positive assurance' that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute.") (citation omitted); *Oldroyd,* 134 F.3d at 76; *Spear, Leeds & Kellogg v. Central Life Assurance Co.,* 85 F.3d 21, 28 (2d Cir.) (citing *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)), *cert. denied,* 519 U.S. 1040, 117 S.Ct. 609, 136 L.Ed.2d 534 (1996); *Collins & Aikman Prods. Co. v. Building Sys., Inc.,* 58 F.3d 16, 19 (2d Cir.1995); *Latona Trucking, Inc.,* 984 F.Supp. at 98. Consequently, " '[i]f the allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them.' " *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 75 (2d Cir.1997) (quoting *Genesco, Inc.,* 815 F.2d at 846).

█ In determining whether a party is bound by an arbitration clause contained in an agreement, courts apply "generally accepted principles of contract law." *Genesco, Inc.,* 815 F.2d at 845; *see also World-Crisa Corp.,* 129 F.3d at 74; *Thomson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995) ("[A]rbitration is contractual by nature—'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' ") (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); *Limonium Maritime S.A. v. Mizushima Marinera, S.A.,* 1999 WL 46721, at *4 (S.D.N.Y. Feb.1, 1999), *aff'd,* 201 F.3d 431, 1999 WL 1070070 (2d Cir. Nov.18, 1999). Consequently, "[t]he Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.' " *WorldCrisa Corp.,* 129 F.3d at 74 (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238,

84 L.Ed.2d 158 (1985) (citing 9 U.S.C. §§ 3–4)); *see also Oldroyd,* 134 F.3d at 76 ("Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of federal courts to enforce such limitations.") (citation omitted); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 25 (2d Cir.1995) (citing *McMahan Secs. Co., L.P. v. Forum Capital Markets L.P.,* 35 F.3d 82, 85–86 (2d Cir.1994)); *Progressive,* 991 F.2d at 45 ("[W]here a court is satisfied that a dispute before it is arbitrable, it must stay proceedings and order the parties to proceed to arbitration."); *Genesco, Inc.,* 815 F.2d at 844; *Fluor Daniel Intercontinental, Inc. v. General Elec. Co.,* 1999 WL 637236, at *4 (S.D.N.Y. Aug.20, 1999) ("Fluor Daniel"). Indeed, the Act requires a court to stay a proceeding in federal court or compel arbitration "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc.,* 470 U.S. at 217, 105 S.Ct. 1238; *see also Collins & Aikman Prods. Co.,* 58 F.3d at 20 (" 'The preeminent concern of Congress in passing the [Arbitration] Act was to enforce private agreements ... and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation....' ") (quoting *Dean Witter Reynolds, Inc.,* 470 U.S. at 221, 105 S.Ct. 1238).

█ "A court asked to stay proceedings pending arbitration must resolve four issues: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration." [5] *Oldroyd,*

---

**5.** Waukesha contends that the third and fourth factors are inapplicable. *See* Def.

Waukesha Mem. of Law at 11.

134 F.3d at 75–76; *see also Genesco, Inc.,* 815 F.2d at 844 (internal citations omitted). Other courts have reduced the question of whether a particular dispute is subject to arbitration to a two-step inquiry: " 'whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims.' " *Progressive,* 991 F.2d at 45 (quoting *David L. Threlkeld & Co., Inc. v. Metallgesellschaft, Ltd.,* 923 F.2d 245, 249 (2d Cir.), *cert. dismissed,* 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991)); *see also Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1063 (2d Cir.1993). The Court will address these factors in turn with respect to Plaintiffs' claims and Carloss' cross-claims against Waukesha.

## A. Plaintiffs' Express Warranty Claim Against Waukesha

### 1. Agreement to Arbitrate

■ In their Amended Complaint, Plaintiffs allege knowledge of, and reliance on, the terms and conditions of the Express Warranty at the time they purchased the gas engines from Waukesha:

> 62. At the time of the sale of the Waukesha gas engines, as a part of such sale and as an inducement to plaintiffs to agree to purchase the Waukesha engines, defendant Waukesha expressly warranted to the plaintiffs in writing, among other things, that the gas engines would be free from defects in material and workmanship . . . .
>
> 63. Plaintiffs purchased the Waukesha gas engines, *relying on such express warranty by Waukesha.*

Amended Compl. at ¶¶ 62–63 (emphasis added).

As previously noted, section VI of the Express Warranty specifically provides for binding arbitration for "[a]ll disputes and claims between the parties which may arise out of or in connection with this Contract." Notwithstanding the clear and unambiguous language employed in the Amended Complaint, Plaintiffs take an in-

consistent position in connection with the instant motion regarding their reliance on the Express Warranty at the time they purchased the Waukesha gas engines. Specifically, Plaintiffs now contend:

> Prior to the commencement of this action, plaintiffs were not aware of the existence of the [Express Warranty] and had not been apprized of its terms and condition[s] or its limitations and restrictions and never consented to the provisions thereof. It was not part of plaintiffs' contract with Carloss.

Pl.Mem. of Law at 8.

Thus, Plaintiffs seek to have their cake and eat it too; they claim reliance on the Express Warranty to establish a claim for breach of the express warranty and, at the same time, disclaim reliance on that same warranty to avoid arbitration.

■ Factual admissions contained in a complaint constitute binding judicial admissions. *See Weyerhaeuser Co. v. Israel Discount Bank of New York,* 895 F.Supp. 636, 650 n. 13 (S.D.N.Y.1995) (citations omitted); *Union Eng'g Co. v. Titan Indus. Corp.,* 1985 WL 1979, at *1 (S.D.N.Y. June 27, 1985). Accordingly, if, as Plaintiffs allege, Waukesha breached the terms of the Express Warranty, then, by virtue of the arbitration clause contained in the Express Warranty, Waukesha is entitled to stay the present proceedings with respect to that claim under 9 U.S.C. § 3. *See Tepper Realty Co. v. Mosaic Tile Co.,* 259 F.Supp. 688, 692 (S.D.N.Y.1966). As the district court stated in *Tepper Realty Co.:*

> Surely, plaintiffs cannot claim that [defendant] is a party to the first contract to enforce it against [defendant] in this action and be heard to deny that it is such a party for purposes of avoiding arbitration of claims clearly within the ambit of the arbitration agreement. *In short, the plaintiffs cannot have it both ways. They cannot rely on the contract, when it works to their advantage, and repudiate it when it works to their disadvantage.* To permit them to do so

would not only flout equity, it would do violence, we think, to the congressional purpose underlying the Federal Arbitration Act.

259 F.Supp. at 692 (emphasis added).

Subsequent courts have similarly estopped parties from maintaining such inconsistent positions to avoid arbitration. *See Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838–39 (7th Cir.1981) ("[W]e believe it would be manifestly inequitable to permit [plaintiff] to both claim that [defendant] is liable ... for its failure to perform the contractual duties described in the [parties'] agreement and at the same time deny that [defendant] is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause."); *Fluor Daniel*, 1999 WL 637236, at *7; *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F.Supp. 293, 300 (S.D.N.Y. 1997); *Avila Group, Inc. v. Norma J. of California*, 426 F.Supp. 537, 542 (S.D.N.Y. 1977).

## 2. Scope of the Arbitration Clause

■ Having answered the initial question of whether Waukesha and Plaintiffs entered into an agreement to arbitrate in the affirmative, the Court turns to the second inquiry: whether the present dispute between the parties falls within the scope of that agreement.

The arbitration clause in the Express Warranty states, in relevant part:

All disputes and claims between the parties which may arise out of or in connection with this Contract shall be settled by good faith negotiation between an executive level representative of each party. If the parties are nonetheless unable to reach agreement, such dispute shall be resolved by *binding arbitration*. The arbitration shall be administered by the American Arbitration Association .... [and] shall take place in Milwaukee, Wisconsin, before one arbitrator.

Express Warranty, at § VI (emphasis in original).

The Court finds the language in the arbitration provision broad enough to encompass a claim for breach of express warranty. First, a claim for breach of express warranty clearly "arise[s] out of" and is "in connection with" the Express Warranty. Second, the arbitration provision lacks restrictive language with respect to the parties or disputes subject to arbitration that might otherwise render Plaintiffs' breach of express warranty claim against Waukesha nonarbitrable. Indeed, other courts have held that similarly broad arbitration clauses justify a presumption of arbitrability. *Oldroyd*, 134 F.3d at 74–76 ("Any dispute, controversy or claim arising under or in connection with this Agreement" described as "the prototypical broad arbitration provision"); *WorldCrisa Corp.*, 129 F.3d at 74–75 ("[A]ny dispute between the Parties over the terms of this Agreement, or any claim of breach by either of the Parties" broad enough to include claims for breach of contract and fraud); *Maritime S.A.*, 1999 WL 46721, at *6 ("Any and all differences and disputes between the partied [sic] of whatsoever nature arising out of or related to this Agreement" broad enough to bind nonsignatories); *Hueston v. Hueston*, 1998 WL 903635, at *3 (N.D.N.Y. Dec.23, 1998) ("[A]ny unresolved dispute between [the parties]" demonstrates parties' intent to submit all disputes to arbitration); *Latona Trucking, Inc.*, 984 F.Supp. at 100–01 ("In the event any dispute arises between the Parties relative to this contract" expresses parties' intention to arbitrate all disputes). Plaintiffs submit no evidence rebutting this presumption; rather, they argue that they were not a party to the Express Warranty and, thus, cannot be bound by the arbitration clause contained therein. This argument, based on a tortured definition of the terms "contract" and "party," is plainly inconsistent with the allegations stated in Amended Complaint and, therefore, must be rejected. Accordingly, Waukesha is entitled to a stay, pursuant to

9 U.S.C. § 3, of Plaintiffs' breach of express warranty claim pending arbitration of that claim.

## B. Carloss' Cross–Claims Against Waukesha

Waukesha also seeks to stay Carloss' cross-claims pending arbitration based on arbitration clauses contained in the Express Warranty and Distribution Agreement. Because Carloss is a *signatory* to the Distribution Agreement and a *nonsignatory* to the Express Warranty (a point not in dispute by the parties), the Court must analyze each agreement independently.

### 1. Agreement to Arbitrate

#### a. Distribution Agreement

■ The arbitration provision included in the Distribution Agreement states, in relevant part:

> Any controversy arising under or in relation to this agreement shall be settled by arbitration, before a panel of three arbitrators in the City of Milwaukee, Wisconsin, in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association.

Distribution Agreement, at Art. XIV(I).

Because Carloss is a signatory to the Distribution Agreement, it is bound by the arbitration clause contained therein. *See Genesco, Inc.*, 815 F.2d at 845 ("Under general contract principles a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation."); *Latona Trucking, Inc.*, 984 F.Supp. at 101 ("[A] signatory has a settled expectation or arbitrating disputes arising from the contract."). Indeed, Carloss concedes this point. *See* Def. Carloss Mem. of Law at 3. Thus, to the extent Carloss' cross-claims against Waukesha fall within the scope of the arbitration provision in the Distribution Agreement, Waukesha is entitled to stay those claims pending arbitration.

#### b. Express Warranty

■ Although "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *AT & T Techs., Inc.*, 475 U.S. at 648, 106 S.Ct. 1415 (quotation omitted), a nonsignatory party may be bound to an arbitration agreement "if so dictated by the ordinary principles of contract and agency." *Thomson–CSF, S.A.*, 64 F.3d at 776 (internal quotation omitted); *see also Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir.1999) ("In this circuit, we have repeatedly found that non-signatories to an arbitration agreement may nevertheless be bound according to ordinary principles of contract and agency.") (internal quotation omitted). For example, a nonsignatory may be compelled to arbitrate (or, as in this case, have its claims stayed pending arbitration) if it entered into a separate contractual relationship with the signatory that incorporates the existing arbitration clause. *See Thomson–CSF, S.A.*, 64 F.3d at 777 (recognizing five theories for binding nonsignatories to an arbitration agreement); *Progressive*, 991 F.2d at 48; *Maritime S.A.*, 1999 WL 46721, at *4–*5.

■ "Notwithstanding the existence of a separate contract between the signatory and the nonsignatory incorporating the arbitration agreement by reference, the nonsignatory still cannot be compelled to arbitrate unless the arbitration clause itself contains language broad enough to allow nonsignatories' disputes to be brought within its terms." *Maritime S.A.*, 1999 WL 46721, at *5 (internal quotation omitted); *see also Progressive*, 991 F.2d at 47; *Thyssen, Inc. v. M/V Markos N*, 1999 WL 619634, at *4 (S.D.N.Y. Aug.16, 1999) ("[C]ourts have held consistently that a 'broad' arbitration clause governing 'all disputes' arising under the [contract] covers even a dispute involving a nonsignatory."). In connection with this inquiry, courts have generally drawn a distinction

between arbitration clauses that are restricted to the parties specifically identified in the agreement and arbitration clauses that are broad enough to cover a dispute which is not solely between the signatories to the agreement. *See, e.g., Progressive,* 991 F.2d at 47–48; *Maritime S.A.,* 1999 WL 46721, at *5; *Latona Trucking, Inc.,* 984 F.Supp. at 100–01.

To illustrate this distinction, in *Progressive,* the Second Circuit distinguished between the two general types of arbitration clauses. At on end of the spectrum are arbitration clauses that refer to the immediate parties to the contract by name, e.g., "Disponent Owners and the Charterers." These clauses are sufficiently restrictive such that nonsignatories to the agreement are not bound by the arbitration clause, despite an incorporation clause. *Progressive,* 991 F.2d at 47–48. At the other end of the spectrum are broadly-worded arbitration clauses that refer to "the contracting parties" or provide for arbitration of "any and all differences and disputes of whatsoever nature arising out of this [agreement]." [6] The *Progressive* Court noted that these clauses are "not restrictively worded by referring to the immediate parties to th[e] contract by name" and, therefore, may bind nonsignatories to arbitration when the agreement or contract is referenced by an incorporation clause. *Id.* at 48. Thus, the Court's task is two-fold: First, the Court must determine whether the Distribution Agreement contains the requisite "words of incorporation" with respect to the Express Warranty. Second, the Court must determine whether the arbitration clause in the Express Warranty is sufficiently broad so that it "may be effectively incorporated by reference into [the Distribution Agreement]." [7] *Id.*

██ The Distribution Agreement between Waukesha and Carloss, which references the Express Warranty, states, in relevant part:

Waukesha's Warranty Certificates ... set forth the terms of Waukesha's warranty of the Products, including the limitations thereof, to Distributor [Carloss] and to Distributor's customer. *Distributor by this Agreement accepts the terms of such warranty, including the limitations thereof, as part of the terms governing its purchases of Products from Waukesha and as governing any warranty obligations of Waukesha to Distributor's customers.*

Distribution Agreement, at Art. VIII(A) (emphasis added). An inspection of the Distribution Agreement reveals that it explicitly incorporates by reference the terms and conditions of the Express Warranty between Plaintiffs and Waukesha, including, but not limited to, the arbitration provision contained therein. *See Maritime S.A.,* 1999 WL 46721, at *6. Significantly, Carloss does not dispute this point in its Memorandum of Law. *See* Carloss Mem. of Law at 3–4.

Additionally, the arbitration clause contained in the Express Warranty is broad enough to be effectively incorporated by reference into other agreements and bind nonsignatories. As previously noted, the arbitration provision states, in relevant part:

All disputes and claims between the parties which may arise out of or in connection with this Contract shall be settled by good faith negotiation between an executive level representative of each party. If the parties are nonetheless unable to reach agreement, such dispute shall be resolved by *binding arbitration.*

---

**6.** The arbitration clause at issue in *Progressive* provided, in relevant part:

Any question or dispute arising between the contracting parties concerning the interpretation of this Reinsurance Agreement. . . . 991 F.2d at 45.

**7.** The crux of Carloss' argument is that its dispute with Waukesha should not be stayed pending arbitration because the arbitration clause, by its terms, applies only to the parties to the Express Warranty, i.e., Plaintiffs and Waukesha. *See* Def. Carloss Mem. of Law at 3–4.

Express Warranty, at § VI (emphasis in original). A separate provision of the Express Warranty states that "[t]he warranties set out above are extended to all owners *in the original chain of distribution*." [8] *Id.* (emphasis added).

The arbitration clause does not contain restrictive language; rather, it contains the standard terms—"arise out of" and "in connection with"—consistently associated with broad arbitration provisions. Such broad language creates a presumption that the parties intended the arbitration provision not to be limited to the signatories of the Express Warranty. Other courts have found substantially similar arbitration clauses sufficiently broad to bind nonsignatories to arbitration when the contract or agreement is referenced by an incorporation clause. *See Progressive,* 991 F.2d at 48 ("Any question or dispute arising between the contracting parties concerning the interpretation of this ... Agreement"); *Fluor Daniel,* 1999 WL 637236, at \*3 ("[A]ll disputes arising in connection with this Agreement"); *Maritime S.A.,* 1999 WL 46721, at \*6 ("Any and all differences and disputes between the partied [sic] of whatsoever nature arising out of or related to this Agreement"); *Thyssen, Inc.,* 1999 WL 619634, at \*2 ("[A]ny dispute arising under this Charter Party or Bills of Lading ... to be referred to arbitration.... One arbitrator to be appointed by the owners and the other by the Charterers."); *Latona Trucking, Inc.,* 984 F.Supp. at 100–01 ("In the event any dispute arises between the Parties relative to this contract"); *see also Import Export Steel Corp. v. Mississippi Valley Barge Line Co.,* 351 F.2d 503, 505–06 (2d Cir.), *reh'g denied,* 356 F.2d 109 (2d Cir.1965) (arbitration clause limited to disputes "between the Disponent Owners and the Charterers"

sufficiently narrow not to bind nonsignatory to arbitration). In light of this well-settled precedent, Carloss' argument that it is not bound by the arbitration clause because it was not a party to the Express Warranty fails to overcome, with positive assurance, the presumption that the parties intended the arbitration clause to encompass disputes involving Carloss. *See, e.g., Oldroyd,* 134 F.3d at 76; *WorldCrisa Corp.,* 129 F.3d at 74.

### 2. Scope of the Arbitration Clause

█ Having answered the initial question of whether Waukesha and Carloss entered into an agreement to arbitrate in the affirmative, we turn to the second inquiry: whether the present dispute between the parties falls within the scope of that agreement.

In accordance with a "healthy regard for the federal policy favoring arbitration," *Moses,* 460 U.S. at 24, 103 S.Ct. 927, courts construe arbitration clauses "as broadly as possible," *Oldroyd,* 134 F.3d at 76 (citation omitted), and resolve "any doubts concerning the scope of arbitrable issues ... in favor of coverage." *Moses,* 460 U.S. at 24–25, 103 S.Ct. 927. "This presumption in favor of arbitration is even stronger when the arbitration clause in the contract is broad." *Fluor Daniel,* 1999 WL 637236, at \*7. Accordingly, " 'the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *Oldroyd,* 134 F.3d at 76 (quoting *WorldCrisa Corp.,* 129 F.3d at 74).

The arbitration clause at issue here contains the "typically broad language," *WorldCrisa Corp.,* 129 F.3d at 75 that

---

**8.** As an authorized distributor for Waukesha's products and seller of the Shredder Drive System purchased by Plaintiffs that employed gas engines designed and manufactured by Waukesha, Carloss would likely be considered an owner in the original chain of distribution. Significantly, the Distribution Agreement pro-

vides that Carloss "shall purchase and maintain ... an inventory of Products," Distribution Agreement, at Art. II(B), and references a Purchase Order and sets forth specific terms with respect to pricing, delivery and risk of loss. *See id.* at Art. I(E)–(G).

makes all disputes and claims "which may arise out of or in connection with this Contract" subject to arbitration. Express Warranty, at § VI; *see also Oldroyd*, 134 F.3d at 74, 76 (describing "[a]ny dispute, controversy or claim arising under or in connection with this Agreement" as the "prototypical broad arbitration provision"). Moreover, Carloss' cross-claims are based on similar factual issues concerning the parties' rights and obligations in connection with the sale of Waukesha gas engines, which is the subject of the Express Warranty.[9] *See, e.g., Genesco, Inc.*, 815 F.2d at 846, *Fluor Daniel*, 1999 WL 637236, at *8. Accordingly, Carloss' cross-claims against Waukesha are presumptively within the scope of the arbitration clause contained in the Express Warranty.[10] *See, e.g., Fluor Daniel*, 1999 WL 637236, at *7 ("In light of this broad arbitration clause, this Court applies a strong presumption of arbitrability in determining the scope of the arbitration clause."); *Maritime S.A.*, 1999 WL 46721, at *6. Similarly, the broad language employed in the arbitration clause contained in the Distribution Agreement also requires that Carloss' cross-claims, which arise out of Waukesha's actions in connection with the sale of its gas engines, be subject to arbitration. *See* Distribution Agreement, at Art. XIV(I). *See Genesco, Inc.*, 815 F.2d at 846–47 (defining the inquiry as whether the allegations underlying the claims "touch matters" covered by the parties' agreement); *Fluor Daniel*, 1999 WL 637236, at *8 (same). Moreover, Carloss fails to demonstrate with "positive assurance" that the arbitration provisions in both the Express Warranty and Distribu-

tion Agreement are not susceptible of an interpretation that covers its asserted cross-claims against Waukesha. Accordingly, Waukesha's motion, pursuant to 9 U.S.C. § 3, to stay Carloss' cross-claims pending arbitration is granted.

### C. Plaintiffs' Remaining Claims Against Waukesha For Breach of the Implied Warranties of Merchantability and Fitness

Waukesha also moves to dismiss Plaintiffs' remaining claims for breach of the implied warranties of merchantability and fitness on the ground that the Express Warranty explicitly precludes these claims or, in the alternative, to stay these claims pending arbitration.[11] *See* Notice of Motion, at ¶ 2.

■ Given the broad arbitration clause contained in the Express Warranty, the determination of whether Plaintiffs' implied warranty claims can be maintained in light of section VI of the Express Warranty is a matter of contract interpretation particularly within the province of the arbitrator. Thus, Waukesha's motion to dismiss these claims is denied. The Express Warranty specifically addresses the availability of pleading alternative causes of action including, but not limited to, a breach of the implied warranties of merchantability and fitness. *See* Express Warranty, at § VI. Thus, it is questionable, in light of the explicit language employed in the Express Warranty whether Plaintiffs may proceed against Waukesha under the alternative theories of recovery

---

9. In its Memorandum of Law, Carloss argues that its "cross-claims contain allegations that Waukesha made untrue, misleading and negligent misrepresentations regarding the use of particular equipment and with respect to a particular customer, plaintiffs here." Def. Carloss Mem. of Law at 5.

10. Carloss does not address the scope of the arbitration provision contained in the Express Warranty in its Memorandum of Law. Rather, Carloss focuses solely on the arbitration pro-

vision contained in the Distribution Agreement, which it contends "do[es] not embrace the subjects of dispute in (its) cross-claims." Def. Carloss Mem. of Law at 5.

11. *See infra*, note 2. Waukesha argues, in the alternative, that Plaintiffs' breach of implied warranty claims should also be dismissed based on a lack of privity between the parties. *See* Def. Waukesha Mem. of Law at 6–9.

alleged in the Amended Complaint. Accordingly, to the extent Waukesha argues that the language of the Express Warranty precludes Plaintiffs' from asserting their implied warranty claims, the Court finds those claims arbitrable.[12]

### III. Conclusion

For the foregoing reasons, Waukesha's motion pursuant to 9 U.S.C. § 3 to stay Plaintiffs' claims and Carloss' cross-claims pending arbitration is **GRANTED**. Waukesha's motion to dismiss Plaintiffs' Third and Fourth Causes of Action for a breach of the implied warranties of merchantability and fitness, respectively, is **DENIED**. Waukesha is hereby directed to file with this Court a report detailing the status of the arbitration within six (6) months of the date of this Memorandum–Decision & Order and every ninety (90) days thereafter, until such time as the Court determines that the stay should be lifted.

**IT IS SO ORDERED.**

---

**12.** The Court notes that even if the implied warranty claims were determined to be non-arbitrable, a stay of those claims pending arbitration would still be warranted in the interests of judicial economy and in light of: (1) the factual overlap between Plaintiffs' implied and express warranty claims; (2) the number of claims and cross-claims subject to arbitration; and (3) the questionable merit of Plaintiffs' implied warranty claims. *See Genesco, Inc.*, 815 F.2d at 856 ("The decision to stay the balance of the proceedings pending arbitration is a matter largely within the dis-trict court's discretion to control its docket.") (citing *Moses*, 460 U.S. at 20 n. 23, 103 S.Ct. 927); *General Media, Inc. v. Shooker*, 1998 WL 401530, at *11 (S.D.N.Y. July 16, 1998) ("Generally, a stay of remaining claims has been found appropriate where such action would 'promote judicial economy, avoidance of confusion and possible inconsistent results and would not work undue hardship or prejudice' against the parties.") (quoting *Acquaire v. Canada Dry Bottling*, 906 F.Supp. 819, 838 (E.D.N.Y.1995)); *Tepper Realty Co.*, 259 F.Supp. at 693.