CLARENDON NATIONAL
INSURANCE COMPANY,
Petitioner,

v.

Lin W. LAN, et al., Respondents.

No. 00 CIV. 8634(JGK).

United States District Court,
S.D. New York.

July 25, 2001.

David L. Fox, New York City, for Plaintiffs.

Jim P. Mahacek, Santa Ana, CA, for Defendants.

**OPINION AND ORDER**

KOELTL, District Judge.

This is a petition to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), brought by Clarendon National Insurance Co. ("Clarendon") against Lin W. Lan ("Lan"), Pacific Pioneer Insurance Company ("Pacific"), UCA General Insurance Services, Inc., UCA General Insurance Agency, Inc. (collectively "UCA"), and Precision Risk Management ("Precision"). Respondent Pacific cross-moves to dismiss the petition pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Respondent Lan also cross-moves to dismiss the petition pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. All of the respondents cross-move to transfer this action pursuant to 28 U.S.C. § 1404(a) to the Central District of California.

I.

This dispute arises out of a complex series of agreements among the parties relating to insurance and reinsurance. Petitioner Clarendon, which is in the property and casualty insurance business, is a New Jersey corporation and also contends that its principal place of business is in New York City. Respondents Pacific, UCA, and Precision are California corporations and have their principal place of business in La Mirada, California. Respondent Lan, a citizen of California, is a principal of Pacific, UCA and Precision. (Pet.'s Petition for Order Compelling Arbitration ("Pet."), ¶¶ 1–2; UCA and Precision Resp'ts.' Answer ("Answer"), ¶¶ 1–2; Declaration of Lin W. Lan dated January 2, 2001 ("Lan Transfer Decl."), ¶ 2, attached to Notice of Motion to Transfer Action pursuant to 28 U.S.C. § 1404(a).)

On or about January 1995, Clarendon entered into an Agency Agreement ("Agency Agreement") with UCA and a Claims Services Agreement ("Claims Agreement") with Precision (collectively the "Agreements"). Pursuant to the Agreements, UCA and Precision agreed to produce, administer and manage insurance policies and related claims on behalf of Clarendon. (Pet. ¶ 5 & Exs. A & B; Answer ¶ 5.) Article IX, Paragraph A of the Agency Agreement and Article 17, Paragraph A of the Claims Agreement provide for arbitration of any dispute arising out of those agreements. (Pet. Ex. A at 14 & Ex. B at 10.) The arbitration provisions in the Agreements provide, in relevant part:

> As a condition precedent to any right of action hereunder, any dispute arising out of this Agreement or the enforcement hereof shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire, meeting in New York City, New York, unless otherwise agreed. The laws of the State of New York shall govern the interpretation and application of this Agreement and the enforcement of the arbitration award.

(Pet. Ex. A at 14 & Ex. B at 10.) In addition, the Agreements provide that "[a]ny suit, action, or other proceeding . . . to compel arbitration . . . may be brought in . . . the United States District Court for the Southern District of New York . . . ." (Pet. Ex. A at 15; Pet. Ex B at 11.)

On May 25, 1995, Lan provided a Continuing Indemnification and Guaranty Agreement ("Guaranty") to Clarendon. (Pet. ¶ 9 & Ex. C; Answer ¶ 9.) In the Guaranty, Lan indemnified Clarendon against all liability and against "all loss, expenses, damages, court costs and attorney fees which [Clarendon] may at any time be exposed to, or suffer in any manner whatsoever because of any failure of"

UCA to perform according to the terms and limitations of the Agreements. (Pet. Ex. C, ¶ 1.) The Guaranty also provides that Lan:

> guarantees prompt payment to [Clarendon] and complete performance, according to all the terms and limitations of the Agreements, in the past, present and future, including payment to [Clarendon] of all court costs, and/or reasonable attorney fees incurred in enforcing the [Guaranty] . . . .

(Pet.Ex. C, ¶ 2.) The Guaranty further provides that it "shall be governed by the laws of the State of New York" and that:

> [a]ny suit, action, or other proceeding by or against either party to [the Guaranty] may be brought in . . . the United States District Court for the Southern District of New York, and each of the parties hereto submits and consents to the non-exclusive jurisdiction of . . . such court for the purpose of any such suit, action or proceeding.

(Pet.Ex. C, ¶¶ 7–8.)

Effective January 1, 1995, Pacific, as reinsurer, entered into a reinsurance contract with Clarendon, entitled the "50% Multi Line Quota Share Reinsurance Contract" ("January 1995 Reinsurance Agreement"). (Pet.Ex. D.) The January 1995 Reinsurance Agreement provided that Pacific would reinsure 50% of the risks assumed by Clarendon on the policies sold by UCA under the Agency Agreement and the claims adjusted by Precision under the Claims Agreement. (Pet.Ex. D.) Effective April 1, 1995, Pacific and Clarendon entered into a separate reinsurance agreement in which Clarendon agreed to act as reinsurer of Pacific with respect to certain specific claims made against policies issued by Pacific as insurer ("April 1995 Reinsurance Agreement"). (Pet.Ex. E.) Both the January 1995 Reinsurance Agreement and the April 1995 Reinsurance Agreement

contain arbitration provisions which provide, in relevant part:

A. As a condition precedent to any right of action hereunder, in the event of any dispute or difference of opinion hereafter arising with respect to this Contract, it is hereby mutually agreed that such dispute or difference of opinion shall be submitted to arbitration.

. . . . .

D. Any arbitration proceedings shall take place at a location mutually agreed upon by the parties to this Contract, but notwithstanding the location of the arbitration, all proceedings pursuant hereto shall be governed by the law of the state in which [Clarendon] has its principal office.

(Pet. Ex. D, Article XVI; Ex. E, Article XVI.)

Subsequently, Clarendon and Pacific have entered into no fewer than five additional reinsurance agreements for periods commencing with July 1, 1997 and continuing to the year 2001 each of which contain an arbitration provision similar to the arbitration provision contained in the January 1995 Reinsurance Agreement and the April 1995 Reinsurance Agreement. (Pet. Exs. F, G, H, I, & J.)

The respondents allege that Clarendon and Pacific entered into another retroactive reinsurance agreement for the year 1998 entitled the "Aggregate Access Reinsurance Agreement," which is memorialized in a term sheet ("Term Sheet"). (Pet. ¶ 11 & Ex. K; Answer ¶ 11.) Clarendon argues that the Term Sheet is unsigned, undated and does not constitute a binding contract between the parties. (Pet. ¶ 11; Affidavit of Robert D. Ferguson sworn to November 8, 2000 ("Ferguson Aff."), ¶ 9.) Clarendon asserts that the Term Sheet was a summary of terms under discussion and that this proposal was abandoned in April 1999, when the parties entered into four unrelated and separate reinsurance agreements. (Ferguson Aff. ¶ 9.) Clarendon contends that, in any event, the Term Sheet expressly incorporates a form arbitration clause known as "Arbitration Clause BRMA 6A" and that, if the Term Sheet is considered a contract, then the respondents are required to arbitrate claims "arising out of or relating to, the formation, interpretation, performance, or breach" of the Term Sheet. (Pet. ¶ 11 & Exs. K & L.)

Various disputes have arisen between the parties under the Agreements, and on May 9, 2000, Lan and Pacific filed a lawsuit against Clarendon in the California Superior Court (the "California Action"). (Pet. ¶ 12 & Ex. M; Answer ¶ 12.) The California Action alleges, among other things, that Clarendon has engaged in a campaign to compete unfairly with Lan, Pacific, and UCA and to destroy their businesses. The California Action alleges claims for unfair competition (Count 1); declaratory relief to determine whether the Term Sheet is an enforceable agreement (Count 2); breach of contract (Count 3); breach of the covenant of good faith and fair dealing (Count 4); intentional infliction of emotional distress (Count 5); and negligent infliction of emotional distress (Count 6).

On or about June 22, 2000, Clarendon served the respondents with its first written demand for arbitration as provided in the various agreements. (Pet. ¶ 17 & Ex. O; Answer ¶ 17.) The respondents' formal response to Clarendon's demand for arbitration was postponed by agreement of the parties while the parties attempted to amicably resolve their disputes. (Pet. ¶ 18; Answer ¶ 18.) On June 23, 2000, Clarendon filed an action in the Southern

District of New York against Lan, which Clarendon dismissed on August 8, 2000 without prejudice. *See* Order dated August 8, 2000. On or about October 6, 2000, Clarendon served the respondents with a written amended demand for arbitration, which included Clarendon's appointment of its arbitrator. (Pet. ¶ 19 & Ex. P; Answer ¶ 19.) Clarendon alleges that the respondents refused to comply with the terms of the various agreements and submit their disputes to arbitration.

On or about October 11, 2000, Clarendon removed the California Action from the California State Court to the United States District Court for the Central District of California before the Honorable Lourdes G. Baird. (Pet. ¶ 13; Answer ¶ 13.) The plaintiffs in the California Action filed a motion to remand the action to state court because of the alleged absence of diversity jurisdiction. Clarendon filed a motion to stay the California Action pending arbitration or to transfer the California Action to the Southern District of New York.

On November 13, 2000, Clarendon filed the present petition to compel arbitration in this Court. Clarendon argues that all of the issues and disputes that have arisen between the parties are arbitrable and should be arbitrated in one proceeding in New York, New York. (Pet. ¶¶ 22–23.) The issues and disputes that Clarendon contends are arbitrable include, but are not limited to: (1) all issues and claims raised in the California Action; (2) what sums, if any, the respondents owe Clarendon under the Agreements; (3) whether the respondents failed to account properly for premiums, return premiums, commissions and provisional commissions and other matters; failed to supply adequate documentation verifying the records they have produced; failed to produce records and/or an accounting thereof; mishandled funds; failed to pay funds to Clarendon; failed to segregate funds; failed to follow Clarendon's written instructions and demands; and concealed information; and (4) whether the respondents' failure to comply with their obligations has damaged Clarendon in an amount which cannot be precisely determined until the respondents have complied with their fiduciary obligations. (Pet. ¶ 22.)

On December 14, 2000, Judge Baird issued an order in the California Action denying the motion to remand for lack of diversity jurisdiction, finding that Clarendon's principal place of business is in New York. (Affidavit of David L. Fox sworn to January 16, 2001 ("Fox Aff."), Ex. A.) On December 22, 2000, Judge Baird issued an order transferring the California Action to this Court pursuant to 28 U.S.C. § 1404(a). (Fox Aff. Ex. B.)

## II.

Clarendon's petition to compel arbitration is governed by the FAA, which provides that written agreements to arbitrate disputes in a contract involving commerce, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Oldroyd v. Elmira Savings Bank, FSB,* 134 F.3d 72, 75 (2d Cir. 1998). In accordance with the FAA, district courts may compel arbitration when a party does not abide by an arbitration agreement. *See* 9 U.S.C. § 4. Under the FAA, arbitration must proceed in the district where the order directing arbitration is filed and a federal district court may only compel arbitration in its own district.

*See* 9 U.S.C. § 4; *In re Home Ins. Co.*, 908 F.Supp. 180, 182 (S.D.N.Y.1995) (collecting cases).

■■■■ When considering a motion to compel arbitration under the FAA, a court must determine: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular disputes sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident and Indemnity Co. v. Swiss Reinsurance America Corp.*, 246 F.3d 219, 226 (2d Cir.2001) (quotation and citation omitted). Whether an agreement to arbitrate governs a particular dispute is essentially a matter of contract interpretation. *See Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 19 (2d Cir.1995) ("Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract."); *see also In re Home*, 908 F.Supp. at 183. While parties are not required to arbitrate when they have not agreed to, *see Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 109 S.Ct. 1248 (1989), they are bound by provisions to which they have agreed. *See Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 845 (2d Cir. 1987).

■■■■ "[F]ederal policy strongly favors arbitration as an alternative dispute resolution process." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir.1991); *see also Hartford Accident and Indemnity*, 246 F.3d at 226. In accordance with that policy, courts should "construe arbitration clauses as broadly as possible," *Threlkeld*, 923 F.2d at 250 (in-ternal quotation and citation omitted), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. 927; *see also Hartford Accident and Indemnity*, 246 F.3d at 226; *Collins*, 58 F.3d at 19. Thus, a district court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that it covers the asserted dispute." *Threlkeld*, 923 F.2d at 250 (internal quotation and citation omitted). The strong policy in favor of arbitration is even stronger where the arbitration clause itself is a broad clause that refers to arbitration of "all disputes arising out of an agreement." *See McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir.1988); *see also Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.2001) ("[R]ecognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow" and that where an arbitration clause is broad there a presumption of arbitrability arises).

### III.

Respondents UCA and Precision do not dispute that they have agreed to arbitrate under the Agency Agreement and the Claims Agreement. (Answer ¶¶ 5–7.) Moreover, UCA and Precision made it clear at argument that they do not dispute the scope of issues sought to be arbitrated and that they do not move to transfer this action to California. Therefore, the petition to compel arbitration is granted with respect to UCA and Precision.[1]

---

1. To the extent that the Answer of UCA and Precision could be construed to argue that arbitration is not appropriate in New York, New York, this argument is without merit.

The arbitration clauses contained in the Agency Agreement and the Claims Agreement clearly provide for arbitration in "New York,

## IV.

■ Pacific moves to dismiss the petition to compel arbitration against it on the basis that the Court lacks personal jurisdiction over Pacific. A district court has "broad discretion" in deciding how to proceed with a motion to dismiss for lack of personal jurisdiction, including conducting an evidentiary hearing. *See CutCo Indus. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986); *APC Commodity Corp. v. Ram Dis Ticaret A.S.*, 965 F.Supp. 461, 464 (S.D.N.Y.1997); *International Customs Assocs., Inc. v. Ford Motor Co.*, 893 F.Supp. 1251, 1258–59 (S.D.N.Y.1995), *aff'd*, 201 F.3d 431 (2d Cir.1999), *cert. denied*, 530 U.S. 1264, 120 S.Ct. 2723, 147 L.Ed.2d 987 (2000). In this case, the affidavits and concessions of the parties establish that there is personal jurisdiction in this District over Pacific and no party has sought an evidentiary hearing.

■ A court sitting in diversity applies the law of the forum state in determining whether it has personal jurisdiction over a defendant. *See CutCo*, 806 F.2d at 365; *APC Commodity Corp.*, 965 F.Supp. at 464.[2] A Court must determine, first, whether New York law permits the exercise of personal jurisdiction over the defendant; and, second, if jurisdiction is proper under New York law, the Court must also determine whether such exercise comports with due process. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ Clarendon first argues that Judge Baird's order dated December 22, 2000 in the California Action granting Clarendon's

New York, unless otherwise agreed." (Pet. Ex. A at 14; Ex. B at 10.)

2. "The FAA standing alone, does not provide a basis for federal jurisdiction ... [and][b]efore a district court may entertain a petition under the FAA, there must be an independent basis of jurisdiction." *Westmoreland Capital*

motion to transfer the California Action to the Southern District of New York held that jurisdiction of Pacific's complaint against Clarendon was properly in New York and that this decision is binding under the "law of the case" doctrine. As Pacific correctly points out, however, Judge Baird's order transferring the California Action to this Court did not rule on the issue of whether this Court had personal jurisdiction over Pacific. Although Judge Baird found that this Court "would also [have] personal jurisdiction over [Clarendon] because it is a corporation with its principal place of business in New York," (Fox Aff. Ex. B at 10) and thus Pacific's lawsuit could have been brought against Clarendon in New York, Judge Baird did not address this Court's jurisdiction over Pacific and determine whether a lawsuit could be brought against Pacific in New York. Thus, there is no law of the case with respect to whether this Court has personal jurisdiction over Pacific.

■ Clarendon argues that this Court has personal jurisdiction over Pacific pursuant to the New York long-arm statute. *See* N.Y. C.P.L.R. § 302(a)(1). N.Y. C.P.L.R. § 302(a)(1) provides in relevant part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state ....

*Corp. v. Findlay*, 100 F.3d 263, 267 (2d Cir. 1996) (citations and internal quotations omitted). In this case, Clarendon asserts subject matter jurisdiction based on the diverse citizenship of the parties pursuant to 28 U.S.C. § 1332.

N.Y. C.P.L.R. § 302(a)(1). Under this provision, "the existence of some articulable nexus between the business transacted and the cause of action sued upon" is essential. *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323 (1981); *see also CutCo*, 806 F.2d at 365.

 Under the first prong of § 302(a)(1) jurisdiction,[3] transacting business "has been interpreted to require a certain quality, rather than a specific quantity, of contacts with New York." *Broad Horizons, Inc. v. Central Crude Ltd.*, No. 94 Civ. 1593, 1994 WL 623075, at *2 (S.D.N.Y. Nov. 9, 1994) (citation omitted); *see also International Customs Assocs.*, 893 F.Supp. at 1259; *Cavalier Label Co., Inc. v. Polytam, Ltd.*, 687 F.Supp. 872, 876 (S.D.N.Y.1988). "A nondomiciliary transacts business under CPLR § 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *CutCo*, 806 F.2d at 365 (internal quotations and citations omitted). "Whether or not the contacts are of the appropriate nature must be determined by an analysis of the totality of the circumstances." *United States Theatre Corp. v. Gunwyn/Lansburgh Ltd. Partnership*, 825 F.Supp. 594, 596 (S.D.N.Y.1993) (citations omitted). Relevant factors, which may be considered in making this determination, include:

(i) whether the defendant has an ongoing contractual relationship with a New York corporation, (ii) whether the contract was negotiated or executed in New York, and, whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship,

(iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [the defendant] to send notices and payments into the forum state or subjects [the defendant] to supervision by the corporation in the forum state. Although all are relevant, no one factor is dispositive.

*Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996) (citations omitted).

 In this case, Pacific contends that this Court lacks personal jurisdiction over it because Pacific did not transact business in New York within the meaning of § 302(a)(1). Pacific argues that it is a California corporation which does business in California and Arizona. (Declaration of Lin W. Lan dated to January 2, 2001 ("Lan Pacific Decl."), ¶ 2, attached to Notice of Motion and Motion to Dismiss by Respondent Pacific pursuant to F.R.C.P. Rule 12(b)(6).) Pacific argues that although it has obtained reinsurance from Clarendon, this reinsurance was obtained through an intermediary, E.W. Blanch Co., located in San Francisco, California and that all of the negotiations for this reinsurance took place in San Francisco. (Lan Pacific Decl. ¶ 3.) Pacific notes that its principal, Lan, has only traveled to New York once to meet with Clarendon regarding the issues in dispute. Pacific also asserts that the arbitration provisions contained in the various reinsurance agreements, as well as the arbitration provision referred to in the Term Sheet, do not state that New York is to be the site of the arbitration. Accordingly, Pacific argues that personal jurisdiction is lacking.

However, Clarendon has established that Pacific transacted business in New

---

**3.** Clarendon does not argue that the Court has personal jurisdiction under the second prong of N.Y. C.P.L.R. § 302(a)(1) for con-

tracting to supply goods or services in New York.

York and that the disputes alleged by Clarendon arise out of that business activity. In Pacific's California Action Complaint, Pacific admits that it had an ongoing contractual relationship since 1995 with Clarendon, a corporation with its principal place of business in New York. (California Action Complaint, attached as Pet. Ex. M ("California Compl."), ¶ 8.) [4] Pacific has entered into no less than seven reinsurance agreements with Clarendon that, although not the subject of the California Action, all contain clauses providing for arbitration and are relevant to the disputes that Clarendon alleges exist between the parties. (Pet.Exs.D–J). Pacific also alleges that the Term Sheet is a binding contract between Pacific and Clarendon and that Clarendon's contention that the Term Sheet is not a contract is a facade. (California Compl. ¶¶ 12–14.) In an attempt to resolve the disputes between Clarendon and Pacific, including the issue of whether the Term Sheet is a binding contract, Lan, Pacific's president, traveled to New York to negotiate with Clarendon's principals. (California Compl. ¶ 17.) Pacific admitted in the California Action that when Lan traveled to New York to resolve the disputes, she did so on behalf of herself and Pacific. (California Compl. ¶ 17.)

 "As the New York Court of Appeals has explained, 'proof of one transaction in New York is sufficient to invoke jurisdiction [under § 302(a)(1)], even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *PDK Labs, Inc.*, 103 F.3d at 1109 (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527

N.Y.S.2d 195, 522 N.E.2d 40 (1988)). Moreover, "New York-based contractual negotiations can by themselves constitute the transaction of business in New York . . . if they substantially advanced or were substantively important or essential to the formation of the contract" so long as "the negotiations . . . relate to the same agreement that is the subject of plaintiff's lawsuit." *CMNY Capital, L.P. v. Perry*, No. 97 Civ. 6172, 1998 WL 132846, at *5 (S.D.N.Y. Mar. 23, 1998) (internal quotation and citation omitted). Here, Pacific had an ongoing contractual relationship with a New York corporation over a period of years. In addition, Lan, on behalf of Pacific, came to New York to conduct negotiations with respect to the disputes that had arisen between the parties, including the dispute over whether the Term Sheet is a binding contract between the parties. This meeting is relevant to show the ongoing contractual relationship between Pacific and Clarendon and to demonstrate that Pacific visited New York for the purpose of meeting with parties to an alleged contract regarding the contractual relationship. *See Agency Rent A Car System, Inc.*, 98 F.3d at 29; *First Wall Street Capital Corp. v. Int'l Property Corp., Ltd.*, 97 Civ. 0702, 1998 WL 338105, at *4 (S.D.N.Y. Jan. 24, 1998). These contacts with New York are integrally related to the claims alleged by Pacific in the California Action—claims that Clarendon argues are arbitrable—and the disputes raised by Clarendon in its petition to compel.

Finally, the various reinsurance agreements between Clarendon and Pacific provided for the arbitration proceedings to be governed by the law of the state in which Clarendon had its principal office. Judge

---

4. Although Pacific, along with the other respondents, argues that Clarendon is a California corporation, as discussed below, Judge Baird's December 18, 2000 order denying the motion by Pacific and Lan to remand already determined that Clarendon's principal place of business is in New York.

Baird has already determined that Clarendon's principal place of business is New York and thus New York law will govern the arbitration in which Pacific agreed to participate.

This is not a case like either *McAny, Inc. v. Carpionato Corp.,* No. 89 Civ. 4528, 1989 WL 120191 (S.D.N.Y. Oct. 3, 1989), or *Premier Lending Servs., Inc. v. J.L.J. Assocs.,* 924 F.Supp. 13 (S.D.N.Y.1996), upon which Pacific relies. In *McAny, Inc.,* Judge Keenan found that "the two meetings in New York appear to have involved mere discussions, if any, rather than substantial negotiations involving the contract at issue," and that these meetings were insufficient to make a prima facie showing of jurisdiction over the defendant. *McAny, Inc.,* 1989 WL 120191, at *2. Similarly, in *Premier Lending Servs., Inc.,* Judge Parker found after holding an evidentiary hearing that the credible evidence supported a characterization of the only New York meeting between the parties to a purported agreement as "a brief progress report" that took place after the execution of the agreement and had "only slight relevance for jurisdictional purposes." *Premier Lending Servs., Inc.,* 924 F.Supp.

at 17. In this case, however, Pacific's contacts with New York were significantly more substantial than in either of those two cases.

 Accordingly, because Pacific's transactions in New York have a substantial relationship to the disputes and issues that Clarendon alleges are arbitrable, and because Pacific negotiated with respect to these disputes and issues in New York, and agreed that New York law would apply to those disputes, Clarendon has established the substantively important contacts required to establish that Pacific "transact[ed] business" in New York such that this Court has personal jurisdiction under § 302(a)(1).[5] Thus, Pacific's motion to dismiss for lack of personal jurisdiction is denied.[6]

## V.

### A.

Lan moves to dismiss the petition pursuant to Fed. R. Civ. 12(b)(6) for failure to state a claim upon which relief can be granted. Lan argues that she is not required to arbitrate because the Guaranty

---

**5.** Pacific argues that Clarendon cannot rely on the Term Sheet to establish personal jurisdiction because Clarendon contends that the Term Sheet is not a binding contract and is therefore judicially estopped from relying on it. It is not the Term Sheet itself that confers jurisdiction, but rather the totality and significance of the contacts with New York. In any event Pacific's argument is without merit. The doctrine of judicial estoppel prevents a party from advancing contradictory factual positions in separate legal proceedings. *See Simon v. Safelite Glass Corp.,* 128 F.3d 68, 71 (2d Cir.1997); *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Industries Inc.,* 84 F.3d 622, 628 (2d Cir.1996). In order to invoke judicial estoppel, a party must establish that the party against whom judicial estoppel is being asserted argued an inconsistent factual position in a prior proceeding and that the court in the prior proceeding must have

adopted the prior inconsistent position in some manner, *see AXA Marine,* 84 F.3d at 628, such as by rendering a favorable judgment. *See Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 98 (2d Cir.1997). In this case, no court has relied on Clarendon's assertion that the Term Sheet is not a binding contract. Moreover, the existence of personal jurisdiction does not turn on the validity of the Term Sheet.

**6.** Pacific does not argue in its submissions on the motion that exercise of personal jurisdiction in this case would violate due process. In any event, Clarendon has made a sufficient showing that Pacific has minimum contacts with New York such that the exercise of jurisdiction comports with and would not offend due process. *See International Shoe Co. v. Washington,* 326 U.S. at 316, 66 S.Ct. 154.

does not contain an arbitration clause, she did not agree to arbitrate disputes regarding the Guaranty, and she is not a party to any arbitration agreement. Lan also contends that the Guaranty does not incorporate any arbitration provision.

 "In considering whether a particular dispute is arbitrable, the court must first decide whether the parties agreed to arbitrate." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 95 (2d Cir.1999) (internal citations and quotations omitted). Whether a person or entity is a party to an arbitration agreement is included within the broader issue of whether the parties agreed to arbitrate. *Id.* In determining whether parties have agreed to arbitrate, courts apply generally accepted principles of contract law. *See Genesco,* 815 F.2d at 844; *The Orange Chicken, L.L.C. v. Nambe Mills, Inc.,* No. 00 Civ. 4730, 2000 WL 1858556, at *3 (S.D.N.Y. Dec. 19, 2000); *Arakawa v. Japan Network Group,* 56 F.Supp.2d 349, 352 (S.D.N.Y.1999).

 Notwithstanding the strong federal presumption in favor of arbitrability, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc.*

v. *Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal quotation and citation omitted); *Thomson–CSF, S.A. v. American Arbitration Assoc.,* 64 F.3d 773, 776 (2d Cir.1995). "It does not follow, however, that under the [FAA] an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." *Thomson–CSF,* 64 F.3d at 776 (internal quotation and citation omitted). The Court of Appeals for the Second Circuit "has made clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency.'" *Thomson–CSF,* 64 F.3d at 776 (quoting *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir.1980)); *see also American Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 352 (2d Cir.1999).[7] The Court of Appeals has specifically recognized five theories for binding nonsignatories to arbitration agreements which arise out of common law principles of contract and agency law: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson–CSF,* 64 F.3d at 776; *see also Smith/Enron Cogeneration,* 198 F.3d at 97; *Am. Bureau of Shipping,* 170 F.3d at 352.

---

7. Clarendon asserts that, under New York State law, Lan is also required to arbitrate under the terms of the Agency Agreement. Under New York law, parties to a contract will not be held to have chosen arbitration "in the absence of an express, unequivocal agreement to that effect." *Marlene Indus. Corp. and Carnac Textiles, Inc.,* 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239, 242 (1978) (quotation omitted). The Court of Appeals for the Second Circuit has explicitly held that Section 2 of the FAA preempts that rule and has instead applied the preponderance of the evidence standard to determine whether parties have agreed to arbitrate. *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 46 (2d Cir.1993);

*see also Intertec Contracting A/S v. Turner Steiner Int'l, S.A.,* No. 98 Civ. 9116, 2000 WL 709004, at *7 n. 1 (S.D.N.Y. May 31, 2000), *aff'd,* —— F.3d ——, 2001 WL 266997 (2d Cir.2001); *Borsack v. Chalk & Vermilion Fine Arts, Ltd.,* 974 F.Supp. 293, 299 n. 5 (S.D.N.Y. 1997). In any event, even under New York law, Lan was an integral participant in the events underlying the arbitrable disputes, all of the disputes in this case are so "inextricably intertwined" as to require Lan to arbitrate, and it is undisputed that some of the parties have agreed to arbitrate these disputes. *See, e.g., PromoFone, Inc. v. PCC Management, Inc.,* 637 N.Y.S.2d 405, 407 (1996); *In re General Re Corp.,* 177 Misc.2d 867, 678 N.Y.S.2d 459, 467–68 (1998).

Clarendon relies principally on the first theory—incorporation by reference—to contend that Lan can be compelled to arbitrate.[8] Clarendon argues that the Guaranty incorporates by reference the Agency Agreement·and the Claims Agreement and thus Lan is subject to the arbitration provisions contained in the Agreements. A nonsignatory to an agreement containing an arbitration provision can be compelled to arbitrate when the nonsignatory is a party to a separate contractual relationship with the signatory to the arbitration agreement which incorporates the existing arbitration clause. *See Maritime S.A. v. Marinera, S.A.,* No. 96 Civ. 1888, 1999 WL 46721, at *5 (S.D.N.Y. Feb. 1, 1999) (collecting cases), *aff'd,* 201 F.3d 431 (2d Cir.1999).

"Notwithstanding the existence of a separate contract between the signatory and the nonsignatory incorporating the arbitration agreement by reference, the nonsignatory still cannot be compelled to arbitrate unless the arbitration clause itself contains language broad enough to allow nonsignatories' disputes to be brought within its terms." *Maritime,* 1999 WL 46721, at *5 (internal quotation omitted); *see also Progressive Cas.,* 991 F.2d at 47–48; *Thyssen, Inc. v. M/V Markos N,* No. 97 Civ. 6181, 1999 WL 619634, at *4 (S.D.N.Y. Aug. 16, 1999). Courts have generally drawn a distinction between arbitration clauses that are restricted to the parties specifically identified in the agreement and broadly worded arbitration clauses, which are not restricted to the signatories to the agreement. *See, e.g., Progressive Cas.,* 991 F.2d at 47–48; *Upstate Shredding, LLC v. Carloss Well Supply Co.,* 84 F.Supp.2d 357, 365–66

(N.D.N.Y.2000); *Maritime,* 1999 WL 46721, at *5.

In this case, the Guaranty signed by Lan, which references the Agency Agreement and the Claims Agreement, states, in relevant part that Lan "guarantees prompt payment to [Clarendon] and complete performance, according to all the terms and limitations of the Agreements...." (Pet.Ex. C, ¶ 2.) Lan signed the Guaranty within a few months after Clarendon entered into the Agreements with UCA and Precision and the Guaranty explicitly refers to the Agreements by name. The Guaranty explicitly recites that it is "an inducement to and in consideration of the execution of [the Agreements], ... [and] of encouraging the continuation or renewal of the [Agreements] ...." Given the explicit language guaranteeing performance of the Agreements, it is clear that the Guaranty incorporates both Agreements by reference, including the arbitration provisions of the Agreements. *See Progressive Cas.,* 991 F.2d at 46 (finding that an insurance policy incorporated by reference the Facultative Reinsurance Agreement, which included an arbitration provision, when it stated "Subject to Facultative Reinsurance Agreement"); *Upstate Shredding,* 84 F.Supp.2d at 366 (concluding that a distribution agreement incorporated a warranty agreement containing an arbitration provision); *Maritime,* 1999 WL 46721, at *6 (holding that a guaranty which guaranteed performance of a charter agreement incorporated the charter agreement).

Moreover, the arbitration provisions contained in the Agreements are broad enough to bind nonsignatories. Article IX of the Agency Agreement and

---

**8.** Clarendon asserts in a footnote in its reply memorandum that assumption and estoppel also apply. Because the Court finds that the Guaranty incorporates the Agency Agreement and that, therefore, Lan is bound by the arbitration provision contained in the Agreements, the Court need not consider these additional theories.

Clause 17 of the Claims Agreement each provide for arbitration of "any dispute arising out of [the respective agreements] or the enforcement hereof." (Pet. Ex. A at 14; Ex. B at 10.) The arbitration clauses do not contain restrictive language, but rather contain the standard term "arising out of," associated with broad arbitration provisions. Indeed, other courts have found arbitration clauses substantially similar to the arbitration clauses contained in the Agreements to be sufficiently broad to bind nonsignatories to arbitration when the contract or agreement is incorporated by reference. *See Progressive*, 991 F.2d at 45, 48 ("Any question or dispute arising between the contracting parties concerning the interpretation of this . . . Agreement"); *Upstate Shredding*, 84 F.Supp.2d at 366 ("All disputes and claims between the parties which may arise out of or in connection with this Contract. . . ."); *Maritime*, 1999 WL 46721, at *6 ("Any and all differences and disputes between the partied [sic] of whatsoever nature arising out of or related to this Agreement"); *Thyssen*, 1999 WL 619634, at *2 ("[A]ny dispute arising under this Charter Party or Bills of Lading. . . ."); *S&R Co. of Kingston, Latona Trucking, Inc.*, 984 F.Supp. 95, 101 (N.D.N.Y.1997) ("In the event any dispute arises between the Parties relative to this contract"), *aff'd*, 159 F.3d 80 (2d Cir.1998), *cert. dismissed*, 528 U.S. 1058, 120 S.Ct. 629, 145 L.Ed.2d 506 (1999). *Cf. Import Export Steel Corp. v. Mississippi Valley Barge Line Co.*, 351 F.2d 503, 505–06 (2d Cir.1965) (arbitration clause limited to disputes "between the Deponent Owners and the Charterers" sufficiently narrow not to bind nonsignatory to arbitration).

 Lan argues that the Guaranty specifies litigation is the method for resolving disputes. She points to a clause of the Guaranty that provides, in relevant part, that:

Any suit, action, or other proceeding by or against either party to this Agreement may be brought in the Supreme Court of the State of New York, County of New York, or in the United States District Court for the Southern District of New York, and each of the parties hereto submits and consents to the non-exclusive jurisdiction of each such court for the purpose of any such suit, action or proceeding.

(Pet.Ex. C.) This provision, however, does not express an intent to litigate rather than arbitrate. Rather, this clause simply provides for jurisdiction in New York courts for suits, actions or proceedings. Clarendon properly relies on that provision to bring the present action in this Court to compel arbitration.

Accordingly, because the Guaranty signed by Lan incorporates the Agreements and because the arbitration provisions of those Agreements are sufficiently broad to bind nonsignatories, Lan is required to arbitrate her disputes with Clarendon arising out of the Agreements.

**B.**

Pacific also moves to dismiss the petition pursuant to Fed. R. Civ. 12(b)(6) for failure to state a claim upon which relief can be granted. Pacific first argues that none of the alleged eight reinsurance agreements entered into between Pacific and Clarendon are at issue and that the claims alleged in the California Action do not arise out of the reinsurance agreements. Pacific also contends that it has never agreed to arbitrate in New York.

The parties do not dispute that Pacific and Claredon have entered into seven of the eight alleged reinsurance agreements. Each of these seven agreements contains an arbitration provision that provides either for arbitration "of any dispute or difference of opinion hereinafter arising with

respect to this Contract"(Pet.Exs.D–F), or for arbitration of "any dispute ... arising out of or in connection with this Agreement, including its formation or actual validity." (Pet.Exs.G–J.) Three of the seven reinsurance agreements state that "[a]ny arbitration proceedings shall take place at a location mutually agreed upon by the parties to this Contract" (Pet.Exs.D–F) and the remaining four reinsurance agreements do not specify a location. (Pet. Exs.G–J.)

The eighth alleged agreement, the Term Sheet, which Clarendon argues is not a valid contract, but which Pacific contends is a binding agreement, incorporates an arbitration provision that provides for arbitration of "[a]ny dispute or other matter in question between [Pacific] and [Clarendon] arising out of, or relating to, the formation, interpretation, performance, or breach of this Contract." (Pet. Exs. K & L.) The arbitration provision provides that arbitration shall be held in a city which had not yet been satisfied or "such other place as may be mutually agreed." (Pet. Ex. L.)

██ Pacific's argument that none of the alleged eight reinsurance agreements entered into between Pacific and Clarendon are at issue in this petition to compel arbitration and that the claims alleged in the California Action do not arise under the reinsurance agreements is without merit. All of the arbitration clauses are broad arbitration clauses and cover the disputes. Pacific alleges in the California Action that it has conducted ongoing business with Clarendon since 1995, an apparent reference to the various reinsurance agreements. (California Compl. ¶ 8.) Pacific also alleges in the California Action that there is a dispute between the parties

as to whether the Term Sheet is a contract. (California Compl. ¶ 24)

[29] In addition, all of the claims alleged by Pacific in the California Action— claims for unfair competition, declaratory relief, breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress and negligent infliction of emotional distress—contain factual allegations concerning the Term Sheet and Clarendon's allegations that the Term Sheet is not a valid contract. (California Compl. ¶¶ 12–14, 16, 24–25, 27–28, 31–35, 39–41, 44–45.) Although Clarendon argues that the Term Sheet is not a binding contract, the arbitration provision incorporated by the Term Sheet specifically provides for arbitration of issues concerning the formation of the Term Sheet. (Pet.Ex. K, L.) Thus, the claims alleged in the California Complaint are claims "arising out of, or relating to, the formation, interpretation, performance, or breach" of the Term Sheet and are thus within the scope of the broad arbitration provision incorporated in the Term Sheet. Although Pacific points out that many of its claims in the California Action are state law tort claims, the arbitration provision contained in the Term Sheet is sufficiently broad to encompass both the tort claims and the contract claims as alleged in the California Action. *See Genesco*, 815 F.2d at 846 ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted."); *see also Aerotel, Ltd. v. RSL Communications, Ltd.*, 99 F.Supp.2d 368, 373–74 (S.D.N.Y.2000); *Ins. Co. of North America v. ABB Power Generation, Inc.*, 925 F.Supp. 1053, 1062 (S.D.N.Y.1996).[9]

---

**9.** Pacific argues that because the FAA does not provide for a separate basis of subject

matter jurisdiction, without Pacific's agreement to arbitrate tort claims apart from mat-

because all of Pacific's claims in the California Action "touch matters" covered by the Term Sheet, *see Genesco,* 815 F.2d at 846 (internal citation omitted), Pacific's claims are arbitrable.

Moreover, in addition to the claims raised by Pacific in the California Action, Clarendon alleges that other disputes between the parties are arbitrable, namely, various alleged acts of misfeasance and nonfeasance on the part of Pacific and other respondents and alleged violations of the respondents' fiduciary duties. The arbitration provisions contained in the seven undisputed reinsurance agreements are classically broad arbitration provisions, *see Louis Dreyfus Negoce,* 252 F.3d at 225 (finding that a clause providing for arbitration of "[a]ny dispute arising from the making, performance or termination" of a contract is a broad clause); *Mehler v. Terminix Int'l Co.,* 205 F.3d 44, 49 (2d Cir.2000) (holding that a clause providing for arbitration of "any controversy or claim ... arising out of or relating to" the agreement is a "classically broad" arbitration clause), *cert. denied,* —— U.S. ——, 121 S.Ct. 2262, 150 L.Ed.2d 247 (2001), and to the extent that Clarendon's alleged disputes involve Pacific and Pacific's obligations under the various reinsurance agreements, those disputes are also arbitrable.

Pacific also contends that it has never agreed to arbitrate in New York. Pacific argues that several of the reinsurance contracts provide that arbitration "shall take place at a location mutually agreed upon," and because Clarendon has never requested that a mutually agreeable location be selected, this Court is without power to order Pacific to arbitrate any disputes in New York.[10] Pacific also asserts that the arbitration provision incorporated by the Term Sheet is blank with regard to where the arbitration should take place and that Pacific has not agreed to arbitrate any disputes in New York.

This argument is also without merit. Under the FAA, 9 U.S.C. § 4, if an agreement to arbitrate does not specify the location of the arbitration, a court may only order that the arbitration be conducted in its own district. *See United States Lines, Inc., Liverpool and London Steamship Protection and Indemnity Assoc., Ltd.,* 833 F.Supp. 350, 351–52 (S.D.N.Y. 1993); *Oil Basins Ltd. v. Broken Hill Proprietary Co. Ltd.,* 613 F.Supp. 483, 486–88 (S.D.N.Y.1985); *see also Bauhinia Corp. v. China Nat'l Machinery & Equipment Import & Export Corp.,* 819 F.2d 247, 250 (9th Cir.1987); *Capitol Converting Co. v. Curioni,* No. 87 C 10439, 1989 WL 152832, at *1–3 (N.D.Ill. Nov. 9, 1989); *Schulze and Burch Biscuit Co. v. Tree Top, Inc.,* 642 F.Supp. 1155, 1157 (N.D.Ill. 1986), *aff'd,* 831 F.2d 709 (7th Cir.1987). In this case, the parties either failed to include any place of arbitration in the agreements or failed to come to a mutual agreement as to where arbitration should

---

ters at issue in the reinsurance agreements there is no federal subject matter jurisdiction upon which the Court may grant Clarendon's petition to compel arbitration. The argument is without merit. This Court has subject matter jurisdiction based on the complete diversity of citizenship of the parties. The Court can then exercise that jurisdiction to determine whether the parties agreed to arbitrate and what the scope of the agreement was.

10. Pacific is incorrect in its papers when it argues that seven of the eight alleged reinsurance agreements provide for a "location mutually agreed upon by the parties." Three of the seven reinsurance agreements state that "[a]ny arbitration proceedings shall take place at a location mutually agreed upon by the parties to this Contract." (Pet.Exs.D–F.) The remaining four reinsurance agreements, however, do not specify a location. (Pet. Exs.G–J.)

take place. The fact that the parties have not agreed on a location to arbitrate does not prevent the Court from ordering the parties to arbitrate in this district and thus, Pacific is required to proceed to arbitration in the Southern District of New York.[11]

## VI.

Pacific and Lan have also moved to transfer this action pursuant to 28 U.S.C. § 1404(a) to the Central District of California for the convenience of the parties and witnesses and in the interests of justice. Clarendon argues that Judge Baird's December 14, 2000 order in the California Action denying the motion by Pacific and Lan to remand for lack of diversity jurisdiction and the December 22, 2000 order in the California Action granting Clarendon's motion to transfer the California Action to the Southern District of New York constitute the law of the case.

▬▬▬▬ Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (citation omitted); *see also Pescatore v. Pan American World*

*Airways, Inc.*, 97 F.3d 1, 7–8 (2d Cir.1996). Although the doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment", *Pescatore*, 97 F.3d at 8, courts "should be loathe to do so in the absence of extraordinary circumstances, such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quoting *Arizona*, 460 U.S. at 618 n. 8, 103 S.Ct. 1382). Compelling grounds upon which a court may reconsider an issue previously determined in an earlier stage of the same litigation are: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or to prevent manifest injustice. *DiLaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir.1992).

"Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts. Indeed, the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Christianson*, 486

---

**11.** Pacific relies on *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326 (5th Cir. 1987). In *Nat'l Iranian Oil,* the parties to a contract agreed to an arbitration clause providing for arbitration in Tehran, Iran, "unless otherwise agreed by the parties." *Nat'l Iranian Oil,* 817 F.2d at 330. The Court of Appeals for the Fifth Circuit held that it had no power to order arbitration in Mississippi because the arbitration provision "suggests that were Iran to become inconvenient or unacceptable to one or both parties, no other forum was to be available unless mutually agreed upon." *Nat'l Iranian Oil,* 817 F.2d at 334. *Nat'l Iranian Oil,* however, is inapposite to the facts of this case. Unlike the arbitration provisions contained in the reinsurance

agreements and incorporated into the Term Sheet, the arbitration agreement in *Nat'l Iranian Oil* specifically provided for a forum, "unless otherwise agreed." *Nat'l Iranian Oil,* 817 F.2d at 330. In *Nat'l Iranian Oil,* the Court did not have the power to compel arbitration in Tehran because Iran did not adhere to the Convention on the Recognition and Enforcement of the Foreign Arbitral Awards and the parties had not otherwise mutually agreed on another forum. *Nat'l Iranian Oil,* 817 F.2d at 331. Thus, because of the forum selection clause designating Tehran, Iran as the forum for arbitration, the Court could not order arbitration in Mississippi. *Nat'l Iranian Oil,* 817 F.2d at 334–35.

U.S. at 816, 108 S.Ct. 2166 (citations omitted). Thus, without compelling grounds or special circumstances, courts in this Circuit have refused to revisit transfer orders from another court. *See, e.g., Washington Nat'l Life Ins. Co. of New York v. Morgan Stanley & Company, Inc.,* 974 F.Supp. 214, 219–220 (S.D.N.Y.1997); *Herskowitz v. Charney,* No. 93 Civ. 5248, 1994 WL 150812, at *2 (S.D.N.Y. April 18, 1994); *Repp v. Webber,* 142 F.R.D. 398, 400–01 (S.D.N.Y.1992); *Dresser Indus., Inc. v. First Travel Corp.,* Nos. 88 Civ. 581, 90 Civ. 470E, 1990 WL 159037, at *3–4 (W.D.N.Y.Oct. 11, 1990).

 In Judge Baird's December 22, 2000 order, Judge Baird granted Clarendon's motion to transfer the California Action to the Southern District of New York. Judge Baird's transfer decision became the law of the case, to be adhered to by a court of coordinate jurisdiction, including this Court. The same factors that Judge Baird considered in transferring the California Action to this Court lead to denying a decision to transfer this petition to compel arbitration to California. The issues in the two actions are inextricably intertwined and the convenience of the parties and the witnesses are the same. Judge Baird pointed to the existence of this action and the arbitration clauses that provided for arbitration in New York and the application of New York law as a reason to transfer the California Action to this Court.

The respondents do not argue that an intervening change in controlling law requires that this Court retransfer the California Action to the Central District of California nor do they present any new evidence to support retransferring the California Action. In addition, Judge Baird's well-reasoned order is not clearly erroneous and there is no manifest injustice in

having the parties to the California Action remain in New York. Thus, the respondents have not presented any grounds for reconsideration of Judge Baird's prior ruling and the Court will not reconsider the previous transfer decision. Moreover, there is no new or different evidence presented by any of the respondents to support transferring this action to the Central District of California. Thus, for the reasons stated in Judge Baird's well-reasoned December 22, 2000 order, the motion to transfer pursuant to 28 U.S.C. § 1404(a) is denied.

To the extent that the respondents appear to argue that there is no subject matter jurisdiction to compel arbitration over the torts pleaded in the California Action, the argument is without merit. In Judge Baird's December 14, 2000 order in the California Action denying the motion by Lan and Pacific to remand, Judge Baird determined that Clarendon's principle place of business was New York and that there was diversity between the parties in the California Action such that there was federal subject matter jurisdiction under 28 U.S.C. § 1332. Judge Baird's December 14, 2000 order determined that diversity jurisdiction existed between Lan and Pacific and Clarendon. The additional respondents—UCA and Precision—are all citizens of California and thus there is complete diversity of citizenship between Clarendon and all of the respondents.

Accordingly, the respondents' motion to transfer pursuant to 28 U.S.C. § 1404(a) is denied.[12]

## CONCLUSION

For the foregoing reasons:

---

**12.** The Court has considered all of the arguments of the parties. To the extent not specif- ically addressed, the arguments are either moot or without merit.

1. Clarendon's motion to compel arbitration pursuant to the FAA, 9 U.S.C. § 4, is granted.

2. Respondent Pacific's cross-motions to dismiss the petition pursuant to Fed. R.Civ.P. 12(b)(2) and Fed.R.Civ.P. 12(b)(6) are denied.

3. Respondent Lan's cross-motion to dismiss the petition pursuant to Fed.R.Civ.P. 12(b)(6) is denied.

4. The respondents' cross-motion to transfer this action pursuant to 28 U.S.C. § 1404(a) to the Central District of California is denied.

5. The Clerk of the Court is directed to close this case.

**SO ORDERED.**